UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ruben Dario Garcia, Jr.,<br><br>                                   Plaintiff,<br><br>v.<br><br>R. Blahnik, et al.,<br><br>                                   Defendants. | Case No.:  14cv875-LAB-BGS<br><br>**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.    PROCEDURAL BACKGROUND

Ruben Dario Garcia ("Plaintiff) is an inmate proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  (ECF No. 1.) Plaintiff filed a Complaint on April 11, 2014, which alleges that Defendants violated his First Amendment rights.  (*Id.*)  Specifically, Plaintiff claims Defendants,[1] all correctional officials at R.J. Donovan Correctional Facility ("RJD"), conspired against him on multiple occasions between April 2012 and August 2013, by charging him with disciplinary violations, failing to process his inmate grievances, and suspending his privileges on the Men's Advisory Counsel, in order to retaliate against him for exercising

---

[1] Plaintiff's Complaint alleges claims against multiple Defendants: R. Estes, R. Blahnik, Mendoza, Benyard, Flores, Hernandez, Canada, J. Cariman, Rutledge, Olson, Ramirez, and Siebel.  The Court will address the claims regarding each Defendant separately.

his First Amendment right to petition for redress. (*See* ECF No. 1 at 5-18, 19-21.) Plaintiff seeks injunctive relief as well as general and punitive damages. (*Id.* at 25.)

Plaintiff filed his Complaint on April 11, 2014. (*Id.*) On December 12, 2014, Defendants moved to dismiss Plaintiff's state-law claim for Equal Protection under the California Constitution on the grounds that he failed to file a government claim. (ECF No. 20.) The Court granted Defendants' Motion to Dismiss regarding some of Plaintiff's claims on September 9, 2015, and Defendants filed an Answer regarding the surviving claims the same month. (ECF Nos. 26, 36.)

On August 8, 2016, Defendants filed their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 63-1.) On August 29, 2014, the Court screened Plaintiff's Complaint and ordered it served on Defendants. The Court notified Plaintiff of the requirements for opposing summary judgment, pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). (ECF No. 64.) On September 9, 2016, Plaintiff filed a motion requesting an indefinite extension of time to respond to Defendants' Motion for Summary Judgment. (ECF No. 68.) In that motion, Plaintiff stated that his legal materials had not been returned to him, and he did not know when he would receive them. (*Id.*) The Court granted Plaintiff's request in part, and set a new deadline for his response to Defendants' Motion for Summary Judgment. (ECF No. 70.)

On November 4, 2016, Plaintiff filed another motion seeking an extension of time to respond to Defendants' Motion for Summary Judgment, again explaining that his legal materials had not been returned to him. (ECF No. 74.) On November 8, 2016, the Court ordered the parties to participate in a telephonic conference call to discuss Plaintiff's claims regarding his legal materials. (ECF No. 75.) That call took place on November 10, 2016. (ECF No. 76.) During that call, the parties explained that Plaintiff does not have access to his legal materials due to a dispute with the prison staff. (*Id.*) As a result, and in order to expedite Plaintiff's ability to meaningfully respond to Defendants' Motion for Summary Judgment, the Court ordered Defendants to provide Plaintiff with (1) a

print-out of the docket; (2) the operative complaint; (3) Defendants' motion for summary judgment and exhibits; (4) Plaintiff's motion to compel (Dkt. No. 46); (5) Plaintiff's supplemental declaration in support of his motion to compel (Dkt. No. 51); (6) Defendants opposition to Plaintiffs motion to compel (Dkt. No. 55); and (7) this Courts order on Plaintiffs motion to compel (Dkt. No. 59). (ECF No. 76.) The Court further ordered Counsel for Defendants to file a declaration with the Court certifying that the above referenced documents were sent to Plaintiff. (*Id.*) The Court set another status conference for November 23, 2016. (*Id.*) Defense counsel filed the requested declaration on November 14, 2016. (ECF No. 77.)

On November 23, 2016, the parties participated in another joint call with the Court. (ECF No. 78.) During the call, Plaintiff confirmed receipt of the documents provided by defense counsel, but reiterated the need for documents currently outside of his possession in order to properly respond to Defendants' Motion for Summary Judgment. (*Id.*) The Court instructed Plaintiff to explain his position in a response to Defendants' Motion for Summary Judgment.[2] (*Id.*) At that time, the Court set a deadline of December 30, 2016 for Plaintiff's responsive brief, and a deadline of January 13, 2017 for Defendants' reply. (*Id.*)

Defendant filed his opposition motion on January 11, 2017, nunc pro tunc January 9, 2017. (ECF No. 80.) After requesting and receiving a one-week extension, Defendants filed their reply brief on January 18, 2017. (ECF No. 83.)

After considering the briefing and for the reasons stated below, the Court **RECOMMENDS** that Defendants' Motion be **GRANTED** in part and **DENIED** in part.

///

///

---

[2] Plaintiff's opposition states that the Court's "decision to force him to response (sic) to defendants motion for summary judgment while suffering from serious mental illness/crisis—deny him a fair hearing and tantamount to an abuse of discretion." (ECF No. 80 at 19-20.) The Court will address this argument below, after addressing the substantive portions of Defendants' Motion.

## II.   FACTUAL BACKGROUND

### A. Defendants' Version of Events

#### 1.  Events Giving Rise to Plaintiff's Claim Against R. Estes

Defendant R. Estes is a correctional officer stationed at RJD.  (Declaration of R. Estes in Support of Defendants' Motion for Summary Judgment (Estes Decl.) ¶ 1.)  On April 16, 2012, Plaintiff gave Defendant Estes a CDCR Form 22 – request for an interview, complaining Defendant Estes was not forwarding his CDCR Form 22[3] documents.  (*Id.* at ¶ 2.)  Defendant Estes states in his declaration that he knew this to be false.  (*Id.*)

Defendant Estes believed that Plaintiff was using this Form 22 and other prison appeals to intimidate staff members into giving him special treatment and things to which he was not entitled.  (Estes Decl. ¶ 2.)  Furthermore, under prison regulations, inmates are only permitted to file an appeal once every fourteen days.  Cal. Code Regs. tit. 15, § 3084.4(a)(1) (2012).  Defendants state that Plaintiff routinely and improperly used the Form 22 to avoid this limitation.  (Estes Decl. ¶ 2.)  Defendant Estes signed the Form 22 and returned it to Plaintiff as required by prison regulations.  (*Id.*)

Defendant Estes then wrote a memo, commonly referred to by prison staff as a "CDCR Form 128-B general chrono," ("general chrono") documenting his belief that Plaintiff was abusing the Form 22 and prison appeals process.  (Estes Decl., Ex. 1.)  Defendant Estes forwarded the memo to Plaintiff's central file.  (Estes Decl. ¶ 3.)  Defendant Estes did not write Plaintiff a disciplinary notice, also called a rule 115 violation report.  (Garcia Dep. at 31:13-24.)  Plaintiff did not lose any yard time, good time credits, or work credits.  (*Id.* at 33:7-17.)  Nor was Plaintiff sent to administrative segregation.  (*Id.* at 34:19-24.)

///

---

[3] A CDCR Form 22 is a form by which inmates can request to speak with prison staff or request specific services.  Cal. Code Regs. tit. 15, § 3086(a) (2012).

### 2.  Events Giving Rise to Plaintiff's Claims Against Defendants R. Blahnik, Mendoza, and Benyard

#### a.  Plaintiff's First Retaliation Claim Against Defendant Blahnik

Defendant Blahnik is the head librarian at RJD and was the librarian for Facility C at RJD when Plaintiff was incarcerated there.  (Declaration of R. Blahnik in support of Defendants' Motion for Summary Judgment (Blahnik Decl.) ¶ 1.)  According to Defendant Blahnik, Plaintiff was frequently disruptive in the law library, arguing with both Defendant Blahnik and the inmate clerks loudly and aggressively.  (*Id.* at ¶ 3.)

On July 25, 2012, Plaintiff filed a Form-22, informing Defendant Blahnik that Plaintiff had four open court cases, and needed more time in the law library.  (Garcia Dep. Ex. 3.)  In this Form-22, Plaintiff stated that Defendant Blahnik scheduled his library time in a way that caused him to miss certain activities such as outdoor yard recreation, religious services, mental health treatment services, and laundry services.  (*Id.*)

On August 7, 2012, Plaintiff filed another Form 22 requesting that he be allowed to make copies of documents free of charge.  (Garcia Dep., Ex. 5.)  Defendant Blahnik replied to this Form 22, informing Plaintiff to abide by the library rules.  (*Id.*)  On August 12, 2012, Plaintiff filed a formal prison appeal, also called a CDCR Form 602, claiming that Defendant Blahnik was not providing him with free copies and free sheets of paper for his cases.  (Garcia Dep., Ex. 6.)

According to Defendant Blahnik, on August 15, 2016,[4] Plaintiff arrived at the law library, refused to sign in, and refused to speak with the law library clerks, instead demanding to speak with Defendant Blahnik.  (Blahnik Decl. ¶ 4.)  In the past, Plaintiff had agreed to work with a specific inmate clerk, Inmate Mayorga, but on this day

---

[4] Defendant Blahnik's declaration cites to the year 2016.  However, given the context provided by the entirety of the declaration, and the accompanying general chrono memorializing this incident, the Court understands this date to refer to August 15, 2012.  (*See also* Blahnik Decl., Ex. 1.)

Plaintiff refused to work with Mayorga.  (*Id.*)  Defendant Blahnik then offered to make the copies for Plaintiff, but Plaintiff refused.  (*Id.*)  Plaintiff demanded that Defendant Blahnik move the copier to the front of the law library, so he could stand immediately next to the copier while Defendant Blahnik made the copies.  (*Id.*)

Defendant Blahnik denied Plaintiff's request that he move the copier,[5] and the two argued, until Plaintiff left the law library without making his copies.  (*Id.*)  Defendant Blahnik then documented Plaintiff's behavior in a general chrono.  (Blahnik, Ex. 1, Garcia Dep. Ex. 10.)  Plaintiff was not sent to administrative segregation, and did not lose any good time credits, work credits, or yard time as a result of the general chrono filed by Defendant Blahnik.  (Garcia Dep. at 122:18-23.)  After leaving the law library, Plaintiff filed another Form 22, claiming that Defendant Blahnik was not helping him in the library.  (Garcia Dep. Ex. 9.)

### b.  Plaintiff's Second Retaliation Claim Against Defendant Blahnik

On August 18, 2012, Plaintiff filed a prison appeal claiming that Defendant Blahnik was not providing him with time in the law library under the Priority Legal User ("PLU") Program.  (ECF No. 63-1 citing Garcia Dep. Ex. 16.)  According to Defendants, the PLU program allows inmates with impending court deadlines to have priority access to the law library.  (ECF No. 63-1 citing Blahnik Decl. ¶ 6.)  On August 22, 2012, Defendant Blahnik scheduled Plaintiff for law library time, but Plaintiff did not show up.  (Blahnik Decl. ¶ 6.)  Defendant Blahnik documented Plaintiff's absence in a general chrono on August 23, 2012.  (Blahnik Decl. ¶ 6, Ex. 2; Garcia Dep. Ex. 11.)  Plaintiff admitted in his deposition testimony that he did not spend any time in administrative segregation, and did not lose any good-time credits, work credits, or yard time as a result

---

[5] Because the copy machine contains metal parts that could be used as weapons, only free staff and inmate clerks are permitted near the copying machine.  (Blahnik Decl. ¶ 5.)  The copier is therefore kept behind the desks of Defendant Blahnik and the inmate-clerks, and is out of bounds for other inmates in the law library.  (*Id.*)  According to Defendant Blahnik, the copier is in the direct line of sight and is easily visible to inmates in the law library.  (*Id.*)

of the general chrono.  (Garcia Dep. at 126:12-15; 127:17- 24.)

### c.  Plaintiff's Third Retaliation Claim Against Defendant Blahnik

On January 28, 2013, Plaintiff again confronted the inmate clerks in the law library, and requested that Defendant Blahnik, as opposed to the inmate-clerks, make copies for him.  (Blahnik Decl. ¶ 7.)  Defendant Blahnik agreed to do so.  (*Id.*)  Plaintiff also requested that he be permitted to stand next to the copy machine while Defendant Blahnik made the copies.  (*Id.*)  Defendant Blahnik told Plaintiff that he could not stand next to the copy machine, but could watch the copies being made from the other side of Defendant Blahnik's desk.  (*Id.*)  Plaintiff requested that Defendant Blahnik move the copy machine to the front of the library so Plaintiff could closely watch him make the copies.  (*Id.*)  Defendant Blahnik states that he and Plaintiff argued for about ten minutes, after which Plaintiff eventually left the library, having made no copies of his documents. (*Id.*)  After this encounter, Defendant Blahnik wrote a Rules Violation Report, also known as a CDCR Form 115 ("RVR") based on "Garcia's cumulative disruptions, refusal to follow instructions, and the failure of the general chronos to alter his behavior."  (ECF No. 63-1 citing Blahnik Decl., Ex. 3; Garcia Decl., Ex. 12.)

Defendant Mendoza signed the RVR because he is Defendant Blahnik's supervisor.  (Blahnik Decl., Ex. 3; Garcia Decl., Ex. 12.)  Defendants explain that Defendant Mendoza did not make a determination of the merits of the RVR, but confirmed that the actions described matched the charges.  (Declaration of E. Benyard in Support of Motion for Summary Judgment (Benyard Decl.) ¶ 3.)  Defendant Mendoza was then responsible for passing along the RVR to the yard captain to be classified—in this case, the yard captain was Defendant Benyard.  (*Id.* at ¶¶ 3, 4.)  Defendant Benyard was required to classify the RVR as administrative or serious, and determine whether or not Plaintiff should be sent to administrative segregation, pending a hearing.  (*Id.* at ¶ 4.)  Because the RVR involved disrespect or disobedience toward staff, Benyard was required to classify the RVR as serious.  (Benyard Decl. ¶ 4; *see* Cal. Code Regs. tit. 15, §

3315(a)(3)(H) (2013).  Defendant Benyard determined, however, that it was not appropriate to send Plaintiff to administrative segregation pending a hearing on the RVR. (Benyard Decl. ¶ 6.)  Plaintiff was found not-guilty of the RVR (Garcia Dep. at 129:4-6) and, as a result, did not lose any work credits or spend any time in administrative segregation.  (Benyard Decl. ¶ 5.)

### 3.  Plaintiff's Retaliation Claim Against Defendants Flores, Hernandez, Benyard, and Canada

On July 21, 2013, Defendant Flores was working overtime as a floor officer in Housing Unit 13 in Facility C.  (Declaration of A.D. Flores in Support of Motion for Summary Judgment (Flores Decl.) ¶ 2.)  Plaintiff approached Defendant Flores and requested that he process another inmate's prison appeal as "confidential correspondence."  (*Id.*)  Defendant Flores informed Plaintiff that prison appeals are not processed as confidential correspondence.  (*Id.*)  Defendant Flores states that Plaintiff told him that he was going to go to every building on the yard and have every inmate try to process all appeals as confidential correspondence every time Defendant Flores was working as a floor officer in their building.  (*Id.* at ¶ 3.)  Defendant Flores also states that Plaintiff threated to orchestrate mass lawsuits against him.  (*Id.*)  After this encounter, Defendant Flores observed Plaintiff walk to an inmate's cell and tell that inmate to write an appeal against Defendant Flores.  (*Id.*)

Defendant Flores wrote an RVR documenting Plaintiff's behavior.  (Flores Decl., Ex. 1; Garcia Dep. Ex. 22.)  Defendant Flores did not place Plaintiff in handcuffs, or otherwise detain Plaintiff.  (Garcia Dep. at 215:5-12.)  Plaintiff did not speak with Defendant Flores again after this confrontation.  (Garcia Dep. at 215:13-14; 216:13-18.) Defendant Flores' sergeant, Defendant Hernandez, signed off on the RVR.  (Flores Decl., Ex. 1; Garcia Dep., Ex. 22.)  Defendant Benyard classified the RVR as serious because it involved disobedience or disrespect, but did not send Plaintiff to administrative segregation.  (Benyard Decl. ¶ 8.)

Defendant Canada, a correctional lieutenant, reviewed the RVR that Defendant

Flores issued against Plaintiff, and found Plaintiff not guilty of the RVR.  (Declaration of V. Canada in Support of Mot. for Summ. J. (Canada Decl.) ¶ 2.)  As a result, Plaintiff did not spend any time in administrative segregation, or otherwise lose good time or work credits.  (*Id.*)  However, because Defendant Canada was concerned about what he characterized as Plaintiff's repeated and escalating challenges to the authority of the correctional officers and Plaintiff's refusal to follow their orders, he documented Plaintiff's actions in a general chrono.  (Canada Decl., Ex. 2; Garcia Dep. Ex. 23.)  Plaintiff was not placed in administrative segregation as a result of the general  chrono, and did not lose good-time or work credits.  (Garcia Dep. at 243:18-244:1.)  Plaintiff did not receive any other disciplinary citations from Defendant Canada.  (Garcia Dep. at 244:2-4.)

### 4.  Retaliation Claim Against Cariman, Rutledge and Benyard

On July 7, 2013, Defendant Cariman was stationed in the Facility C Medical Office, where he provides security while the nurses dispense medication to the inmates.  (Declaration of J. Cariman in support of Defendants' Motion for Summary Judgment (Cariman Decl.) ¶ 2.)   According to Defendant Cariman, on July 7, 2013, Plaintiff confronted the nurse dispensing the medication and accused her of contaminating the medication.  (*Id.* at ¶ 3.)  Plaintiff refused to provide his identification to the nurse, and refused to take his medication.  (*Id.*)  According to Defendant Cariman, Plaintiff then confronted Defendant Cariman, claiming the nurse had contaminated his medication, and demanded to know what he was going to do about it.  (*Id.* at ¶ 4.)  Defendant Cariman told Plaintiff that he must either take his medicine from the nurse, or forfeit treatment and leave.  (*Id.*; Garcia Dep. at 180:16-22.)  Plaintiff returned to his cell without taking his medication.  (*Id.*)  Plaintiff then submitted a Form 22, claiming that Defendant Cariman failed to stop the nurse from contaminating his medication.  (Garcia Dep., Ex. 20.)

On July 24, 2013, while in the pill line, Plaintiff again refused to provide his identification to the nurse, refused to take his medicine, and accused the nurse of contaminating his medication.  (Cariman Decl. ¶ 5.)  According to Defendant Cariman,

Plaintiff refused orders to either take his medicine or return to his cell.  (*Id.*)  Defendant Cariman states that Plaintiff continued to argue in a loud voice for approximately ten minutes.  (*Id.*)

As a result, Defendant Cariman handcuffed Plaintiff and led him to a holding cell in the nearby gym.  (*Id.* at ¶ 6.)  Defendant Cariman explains in his declaration that he removed Plaintiff from the pill line because he knew that Plaintiff was on psychiatric medications, and was aware of at least two occasions where Plaintiff had not taken them.  (*Id.*)  Defendant Cariman was concerned that Plaintiff might become violent.  (*Id.*)  Defendant Cariman then wrote a RVR detailing what happened, and charging Plaintiff with delaying a peace officer in performance of his duties.  (*Id.*)

Defendant Rutledge signed off on the RVR.  (*Id.*)  Defendant Benyard, in his capacity as the Yard Captain, classified the RVR  as serious because it involved acts of disobedience or disrespect.  (Benyard Decl. ¶ 7; *see* Cal. Code Regs. tit. 15, § 3315(a)(3)(H) (2013))  Defendant Benyard did not send Plaintiff to administrative segregation pending a hearing on the RVR.  (Benyard Decl. ¶ 7.)  Plaintiff was eventually found not guilty of the RVR (Garcia Dep. Ex. 21 at 4), and did not lose any good time or work credits, or suffer other penalties as a result of the RVR.  (*Id.*; Benyard Decl. ¶ 5.)

### 5.   Retaliation Claim Against Defendant Benyard Regarding Removal from the Men's Advisory Council

Defendant Benyard was the Captain of Facility C, where Plaintiff was housed.  (Benyard Decl. ¶ 2.)  Plaintiff held a position on the Men's Advisory Council, also known as the MAC.  (*Id.* at ¶ 9.)  The MAC consists of a group of inmates elected by other inmates that advise the warden and other staff on matters of concern to the inmate general population.  Cal. Code Regs. tit. 15, §3230(a)(1) (2013).

Defendant Benyard does not dispute that he removed Plaintiff from the MAC.  (Benyard Decl. at ¶ 11.)  In his declaration, Defendant Benyard explains the basis of his decision to remove Plaintiff from MAC.  (*Id.*)  Defendant Benyard states that Plaintiff

had numerous RVRs in his file, which may be a basis for disqualification from the MAC. (Benyard Decl. ¶ 11; *see also* Cal. Code Regs. tit. 15, §3230(b)(2) (2013).)  Defendant Benyard also explains that Plaintiff would confront him about his prison appeals and RVRs, and attempt to argue with him about them during the MAC meetings.  (Benyard Decl. ¶ 10; Garcia Dep. 137:12-138:11.)  According to Defendant Benyard, Plaintiff's interruptions during MAC meetings to discuss his own appeals took time from the MAC to address issues important to the entire inmate population.  (Benyard Decl. ¶ 10.)  Defendant Benyard restored Plaintiff to the MAC when his RVRs were dismissed. (Garcia Dep. at 203:13-204:2.)

### 6. Retaliation Claim Against Defendants Olson, Ramirez, and Siebel

In 2013, Defendants Olson and Ramirez were appeals coordinators at RJD.  (Olson Decl. ¶ 1; Ramirez Decl. ¶ 1.)  Defendant K. Siebel was the Chief Deputy Warden.[6] (Siebel Decl. ¶¶ 1, 2.)  Plaintiff submitted an appeal alleging Defendants Flores, Hernandez, and Benyard had retaliated against him by filing the RVR which referred to

---

[6] Defendants provide an overview of the Prison Appeals process.  The Court repeats this overview to provide context and background to the proceeding discussion.  The California Code of Regulations, title 15, section 3084.1(a), Right to Appeal, states: "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy, which they can demonstrate as having an adverse effect upon their welfare."  The appeals office for each prison receives all inmate grievances (known as appeals or CDCR Form 602) submitted by inmates at the institutional level.  (Self Decl. ¶ 1.)  There are three formal levels of appeal review. Cal. Code Regs. tit. 15, § 3084.5. In order to be timely, the appeal must be submitted within thirty (30) calendar days of the action or decision being appealed.  Cal. Code Regs., tit. 15, § 3084.8(b).  The inmate begins by submitting his grievance at the first level, which is addressed by the First Level Reviewer.  (Self Decl. ¶ 2.)  If the inmate is not satisfied with the first-level response, he may submit the appeal for a second level of review.  (*Id.*)  The second-level review is conducted by the Hiring Authority or his/her designee.  (*Id.*) If the inmate is not satisfied with the second-level response he may submit it to the Office of Appeals for third-level review in Sacramento.  (*Id.*; Declaration of M. Voong, Chief of the Office of Appeals ("Voong Decl.") ¶¶ 5-6.)  The third level of review is conducted by the Chief of Appeals, and completes the exhaustion process.  (*Id.*)  Once the inmate receives the response to the third level review, he has exhausted his administrative remedies.  (*Id.*)  Appeals meeting the processing requirements under Title 15, including the provision of providing required supporting documents and meeting all time constraints, are assigned for response at the appropriate level.  (Self Decl. ¶ 3.)  If an appeal does not meet the requirements for processing, which can include a failure to provide required supportive documents or a failure to meet time constraints, the appeal will be "screened out" or cancelled and returned to the inmate with written instructions on how to correct the deficiencies or appeal the cancellation.  (*Id.*)

his attempts to have other inmates file mass lawsuits against Flores. (Self Decl. ¶ 7(a).)
On September 4, 2013, the appeals coordinators screened the appeal because Plaintiff had
not attached the RVR on which it was based. (Self Decl. ¶ 7(b); *see also* Olson Decl. ¶ 8;
Ramirez Decl. ¶ 8.) Plaintiff submitted the appeal a second time, but did not include the
rights and responsibility statement as required, so it was again screened and returned.
(Self Decl. ¶ 7(c).) Plaintiff never resubmitted the appeal, or otherwise exhaust his
administrative remedies against Defendants Flores, Hernandez, or Benyard arising from
Defendant Flores' RVR against him. (*Id.* at ¶ 8.)

### B. Plaintiff's Version of Events

#### 1. Claim Against Defendant Estes

According to Plaintiff, he approached Defendant Estes on April 16, 2012 and
presented him with a grievance Form 22 asking for a "written response accounting for
just cause for his individual acts of entering 'false and misleading information' into a
(sic) official state record in clear violation of CDCR policies and procedural rules."
(ECF No. 1 at 5-6.) Defendant Estes signed the form, as required. (*Id.* at 6.) On April
16, 2012, Defendant Estes filed a general chrono which charged Plaintiff with violating
the CDCR by using the Form 22 and Form 602 process to intimidate staff, threaten staff,
harass staff, manipulate staff or unlawfully influence staff. (ECF No, 1 at 6; ECF No. 80
at 5.)

#### 2. Claims Against Defendant Blahnik

##### a. August 15, 2012 General Chrono

On July 25, 2012, Plaintiff filed a grievance with the CDCR addressed to
Defendant Blahnik regarding how Plaintiff had tried to participate in the "Priority Legal
User" program, given the number of civil and criminal cases Plaintiff was litigating.
(ECF No. 1 at 7.) Plaintiff states that the law library staff, including Defendant Blahnik,
were only allowing Plaintiff to access the library services during his scheduled yard
recreational program, which deprived him of his outdoor time, religious services, mental
health treatment, and laundry time. (*Id.*)

On August 5, 2012, Plaintiff states that he filed a "group appeal" which alleged that the library staff, including Defendant Blahnik, were violating inmate's rights by keeping the law library copy machine in the back room in a secluded area, hidden from view.  (*Id.* at 7.)  Plaintiff alleges that Defendant Blahnik kept copies of inmate's confidential papers and was revealing the information contained in those papers to others. (*Id.*)  On August 7, 2012, Plaintiff requested that he be given a number of writing supplies free of charge, because he was an indigent inmate.  (*Id.* at 8.)  When Defendant Blahnik refused to provide these materials free of charge, Plaintiff served him with a Form 22 requesting 1) 50 blank sheets of paper, 2) 20 exhibit cover sheets; 3) duplication services of confidential legal papers.  (*Id.*)  Plaintiff states that Defendant Blahnik responded to the Form 22 by telling Plaintiff to obtain the requested services through the Inmate Clerks at the law library.  (*Id.*)

On August 8, 2012, Plaintiff filed a Form 22 and addressed it to RJD Facility C Captain K. Reid reporting "Defendant Blahnik illegal acts and requesting for her intervention in the matter specifically by taking the necessary steps to deter defendant Blahnik from continuing his illegal acts."  (*Id.* at 8.)  Plaintiff noted in this Form 22 that "any attempts to punish him in retaliation by defendant R. Blahnik for filing said appeal would also be illegal."  (*Id.*)  On August 12, 2012, with no response from Captain K. Reid, Plaintiff filed a grievance with the CDCR requesting that the appropriate staff take action to "protect plaintiff's civil rights from defendant R. Blahnik illegal acts."  (*Id.* at 9.)

On August 14, 2012, Plaintiff filed a second Form 22 appeal and forwarded it to Captain K. Reid again asking for protection of his civil rights "at the hands of defendant R. Blahnik illegal acts."  (*Id.*)  Also on August 14, 2012, Plaintiff filled out a Form 22 to Sergeant T. Stricklin reporting his attempts to obtain library services and be provided confidentiality in his legal papers and correspondence with the Court.  (*Id.* at 9.)  Plaintiff was approved with PLU status on August 15, 2012.  (*Id.*)  Plaintiff went to the law library and asked Defendant Blahnik for duplication services.  (*Id.*)  According to Plaintiff,

Defendant Blahnik refused to help him and directed him to get help from the clerks or to leave the library. (*Id.*) Plaintiff declined to have other inmates take possession of his confidential papers and informed Defendant Blahnik that his acts were illegal and he would be filing a grievance. (*Id.* at 9-10.) Plaintiff filed a Form 22 addressed to Defendant Blahnik. (*Id.* at 10.)

On August 15, 2012, Defendant Blahnik filed a CDC-128 Misconduct Report with the CDCR formally charging Plaintiff with a number of "disciplinary infractions" and taking disciplinary action against him by and through such filings. (*Id.*) Plaintiff states that Defendant Blahnik threatened that Plaintiff could lose his Priority Legal User privilege for thirty days if this behavior continued. (ECF No. 80 at 8.)

On August 30, 2012, Plaintiff filed a second CDC-602 inmate Appeal/Grievance reporting that Defendant Blahnik filed a retaliatory disciplinary charge and had taken other adverse actions against Plaintiff. (ECF No. 1 at 10.) Plaintiff states that Defendants Olson, Ramirez, and Seibel acted in concert and took physical possession of his grievance and sequestered it. (*Id.* at 10.) Plaintiff states that these Defendants did not properly process the grievance. (*Id.* at 11.)

### b.  August 23, 2012 General Chrono

Plaintiff acknowledges that Defendant Blahnik issued a general chrono stating that Plaintiff did not come to the library as scheduled. (ECF No. 80 at 9.) According to Plaintiff, he was not absent from his scheduled time in the library.[7] (*Id.*)

### c.  Rules Violation Report

Plaintiff states that he attended the law library on January 28, 2013, where Defendant Blahnik was the librarian service provider. (ECF No. 1 at 11; ECF No. 80 at 10.) Plaintiff requested duplication services of his legal documents, which contained confidential information. (ECF No. 1 at 11; ECF No. 80 at 11.) Plaintiff states that

---

[7] Plaintiff does not clarify if he was present in the library, or not scheduled to be in the library in the first place.

Defendant Blahnik required Plaintiff to allow himself or the other inmate clerks to take possession of his confidential correspondence/legal papers so "they could take such to the back of the library to a secluded and hiden (sic) area to be duplicated by them via copier machine." (ECF No. 1 at 11.)

Plaintiff states that he did not confront any of the inmate clerks or demand to stand next to the copy machine. (ECF No. 80 at 11.) According to Plaintiff, the copy machine was "in the back of the library . . . in a back room where it was kept hidden and secluded from view." (*Id.*) As a result, Plaintiff "could not make sure that his right guarantee by law to confidentiality was honor when the copies would be made." (*Id.*) Plaintiff states that he requested that Defendant Blahnik "move the copier up into the very front of the library," but Defendant Blahnik refused. (*Id.*) Plaintiff declined these services and notified Defendant Blahnik that he was violating his rights and "for that reason Plaintiff was going to file a written grievance against Blahnik with the CDCR." (ECF No. 1 at 11; ECF No. 80 at 11.) On January 28, 2013, Defendants Blahnik, Mendoza, and Benyard filed a RVR charging Plaintiff with violating the CDCR rules. (ECF No. 1 at 11.)

### d. Plaintiff's Removal from the Men's Advisory Counsel

Plaintiff states that he was on the Men's Advisory Counsel, as a representative elected by inmate popular vote. (ECF No. 80 at 52.) Plaintiff states that Defendant Benyard removed him from his MAC representative position. (*Id.* at 58.)

### 3. Defendant Flores

Plaintiff states that "a few inmates, including inmate Lozano" contacted him and notified him, as their MAC representative, that Defendant Flores was refusing to process inmate grievances as confidential mail. (*Id.* at 52-53.) As a result, Plaintiff personally contacted Defendant Flores to inquire with him whether he was going to process these grievances as confidential correspondence. (*Id.* at 53.)

Defendant Flores notified Plaintiff that he will not, under any circumstances, process any inmate grievances as confidential correspondence. (*Id.* at 54.) Thereafter, Plaintiff verbally notified Defendant Flores that not processing any inmate grievances as

confidential mail clearly infringed upon his rights to confidential correspondence under the law.  (*Id.*)  Plaintiff informed Defendant Flores that he was going to "file written grievance with the CDCR jointly/together with other inmates for these violations by him of our civil rights."  (*Id.*)  According to Plaintiff, Defendant Flores stated, "So what you are saying to me is, that you jointly and together with other inmates will conspire to file grievance against me because I won't process inmate grievances as confidential correspondence?"  (*Id.*)  Plaintiff stated that he responded "yes it was exactly what I and other inmates will do."  (*Id.*)  Plaintiff then spoke to inmate Lozano and told him to write the office a grievance and that Plaintiff will do the same so they can have evidence to show the prison administrators what he is doing.  (*Id.*)

### 4.  Claim Against Defendants Hernandez and Benyard

Plaintiff states that Defendants Hernandez and Benyard "formally took disciplinary action against Plaintiff with the CDCR by signing the Flores RVR and filing the report with the CDCR.  In doing so, classifying Plaintiff acts and activities serious disciplinary offenses by him and referring the disciplinary matter for further disciplinary action to be taken . . . against Garcia."  (*Id.* at 15.)

### 5.  Defendant Canada

On August 5, 2013, Plaintiff appeared before Defendant Canada for the adjudication of the disciplinary charges filed against him.  (ECF No. 1 at 15.)  During this hearing, Defendant Canada informed Plaintiff that he was finding him not guilty, but "given that he felt ahe (sic) needed to take disciplinary action against Plaintiff to deter him from what he consider (sic) the 'unlawful influence' on other inmates aim at having them file grievances against RJD staff he was going to give plaintiff a 'terse and concise' verbal reprimand  with warning to the plaintiff if he engaged in these king (sic) of behavior could result in further disciplinary actions."  (ECF No. 1 at 15-16.)  Defendant Canada also wrote and filed a general chrono and placed this document within Plaintiff's C-File "as permanent record of disciplinary matter."  (ECF No. 80 at 16.)  Plaintiff states that this information is considered by the CDCR "in determining Plaintiff future housing

and program eligibility when applying the classification process" to his case.  (*Id.* at 17.)

### 6. Defendant Cariman

On July 7, 2013, Plaintiff complained about the medication being contaminated because of the manner in which it was being dispensed.  (*Id.* at 18.)  Plaintiff declined treatment "because the [nurse] on duty did not respond" to his complaints and concerns "about his health and safety."  (*Id.*)  Plaintiff states that he did not berate the nurse, nor confront her.  (*Id.*)  Plaintiff approached Defendant Cariman to complain about the contamination of the medication, but Defendant Cariman ordered Plaintiff to take his medication or forfeit treatment and leave.  (ECF No. 1 at 12; ECF No. 80 at 18.)  Plaintiff elected to return to his cell without treatment.  (ECF No. 80 at 18.)  Plaintiff when wrote a Form 22 Appeal to Defendant Cariman stating that his lack of response regarding the contaminated medicine was improper.  (*Id.*)  Plaintiff states that he did not argue with Cariman.  (*Id.* at 18-19.)

On July 24, 2013, Plaintiff was in the pill line again.  (ECF No. 1 at 13; ECF No. 80 at 19.)  He took his medication and proceeded to leave.  (*Id.*)  At that time, Defendant Cariman asked Plaintiff "what's this you don't want them touching your i.d.?"  (ECF No. 1 at 13; ECF No. 80 at 19.)  Plaintiff states that Defendant Cariman did not ask Plaintiff for his ID.  (*Id.*)  Plaintiff told Defendant Cariman that he had filed a grievance about him the previous week.  (*Id.*)  Defendant Cariman responded "Oh yeah! You wrote me up! Then turn around and cuff up!"  (ECF No. 1 at 13; ECF No. 80 at 19.)  Plaintiff states that he immediately complied with Defendant Cariman's instructions, at which time he was "placed under arrest" and handcuffed.  (ECF No. 80 at 48.)  Defendant Cariman escorted Plaintiff to the Facility C gym and placed Plaintiff "inside a metal cage under lock and key and while handcuffed."  (*Id.*)  Plaintiff states that he did take his medication on July 24, 2013.  (*Id.* at 48-49.)  Plaintiff states that he did not argue with Defendant Cariman, or speak to him in a loud voice.  (*Id.* at 49.)

### 7. Defendants Olson, Ramirez and Seibel

Plaintiff states that he timely and properly complied with the instructions when his

appeal was denied at the first level by attaching the requested RVR-115 No. FC-13-378 to his original appeal and resubmitting the appeal to the Appeals Office within the thirty days required.  (*Id.* at 58.)  On October 1, 2013, after he had re-submitted his appeal, Plaintiff states that the Appeals Office alleges that they screened out his appeal because he had not provided a "Rights and Responsibility" statement as part of his appeal.  (*Id.* at 58.)  Plaintiff states that Defendants Olson, Ramirez and Seibel withheld, sequestered or destroyed his grievance.  (ECF No. 1 at 15.)  This denied him the opportunity to properly exhaust his administrative remedies on those issues.  (ECF No. 80 at 59.)  Plaintiff also states that Defendants Olson and Ramirez improperly screened his appeal against Defendant Flores.  (*Id.* at 60.)

## III.   RELEVANT LAW

### A. Summary Judgment Standard

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment.  *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).  However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Rather, he must present "specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court may not weigh evidence or make credibility determinations on a motion for summary judgment.  Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.

*Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255.  However, in determining whether the nonmovant has met his burden, the court must consider the evidentiary burden imposed upon him by the applicable substantive law.  *Id.*

### B. Retaliation

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (fn. and citations omitted).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right.  *Pratt v. Rowland*, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); *see also Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.

To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct.  *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009).  Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient.  *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); *accord*, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).  In addition to demonstrating defendant's knowledge of plaintiff's protected conduct,

circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

The third element includes prisoners' First Amendment right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n. 2, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes*, 408 F.3d at 567–68. Protected speech also includes an inmate's statement of intent to pursue an administrative grievance or civil litigation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes*, 408 F.3d at 567; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Under the fourth element, plaintiff need not demonstrate a "total chilling of his First Amendment rights," only that defendant's challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568–69 (citation and internal quotation marks omitted). Moreover, direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. *Id.* at 568 n. 11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. *Brodheim*, 584 F.3d at 1269 (citing *Rhodes*, 408 F.3d at 568 n. 11).

Regarding the fifth element, the Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they

1  provide the motivation for an official act taken, will defeat a claim of retaliation."

2  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo*, 778 F.2d at 532.  When

3  considering this final factor, courts should "'afford appropriate deference and flexibility'

4  to prison officials in the evaluation of proffered legitimate penological reasons for

5  conduct alleged to be retaliatory."  *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515

6  U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).  Plaintiff bears the burden of

7  pleading and proving the absence of legitimate correctional goals for defendant's

8  challenged conduct. *Pratt*, 65 F.3d at 806.

9  **IV.   DISCUSSION**

10      **A. Defendant Estes**

11      Defendant Estes is a correctional officer stationed at RJD.  (Estes Decl. ¶ 1.)

12  Plaintiff's argues that Defendant Estes wrote and filed a general chrono which stated that

13  Plaintiff violated the CCR by using the prison CDCR-Form 22 and/or CDCR Form 602

14  process to intimidate, threaten, harass, manipulate or unlawfully influence staff.  ECF No.

15  80 at 5.)[8]  Plaintiff argues that this constitutes an adverse action, sufficient to support a

16  claim of retaliation.  Defendants argue that a general chrono is not a disciplinary action,

17  but, rather, an informational document.  Defendants note that Plaintiff did not lose any

18  yard time, good time credits, or work credits as a result of this general chrono (Garcia

19  Dep. at 33:7-17), nor was he sent to administrative segregation.  (*Id.* at 34:19-24.)

20      Retaliation by a state actor for the exercise of a constitutional right is actionable

21  under 42 U.S.C. § 1983.  *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84,

22  97 S.Ct. 568, 50 L.Ed.2d 471 (1977).  "Within the prison context, a viable claim of First

23  Amendment retaliation entails five basic elements: (1) An assertion that a state actor took

24  some adverse action against an inmate (2) because of (3) that prisoner's protected

25  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

26  rights, and (5) the action did not reasonably advance a legitimate correctional goal."

27  _____

28  [8] The Court references the page numbers from the Court's electronic filing system.

*Rhodes*, 408 F.3d at 567–68 (footnote omitted).

Here, plaintiff has failed to demonstrate a genuine dispute of material fact that Defendant Estes took an adverse action against him.  An adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006).  In the prison context, the action taken must be clearly adverse to the plaintiff.  *See e.g., Rhodes*, 408 F.3d at 568 (noting that arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances was sufficient to plead an adverse action); *Pratt*, 65 F.3d at 806 (reaffirming that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation).  Defendants note that California regulations identify a CDC 128–B general chrono as a memorandum " . . . which is used to document information about inmates and inmate behavior."  Cal. Code Regs. tit. 15, § 3000 (2013).  Defendants further note that, unlike a CDC Form 128-A, 128-B general chronos are not described in the regulations as "discipline."  (ECF No. 63-1 at 20 citing Cal. Code Regs. tit. 15, § 3312(a)(2) (2013) (describing CDCR Form 128-A chronos as discipline).

In support of his argument, Plaintiff cites *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) for the proposition that the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.  He also argues that the general chronos are used in housing determinations.[9]  (ECF No.

_____

[9] Defendants state that Plaintiff is arguing that the general chromos were adverse actions because they could affect his parole.  (ECF No. 21.)  Although Plaintiff does not mention this argument in his opposition motion, because Defendants mention this argument, the Court will address it.  Plaintiff concedes in his deposition that he is serving a life sentence without the possibility of parole.  (Garcia Dep. 33:17-18.)  In his deposition, however, Plaintiff also argues that he might be granted clemency, reducing his sentence to life with parole (*Id.* at 33:19-24) because, while he admits to murdering his girlfriend, he did not rape her.  (*Id.* at 42:13-44:22.).  Plaintiff has not yet applied for clemency, because he believes it would be premature.  (Garcia Dep. at 34:5-16.)  The Court agrees that this argument is far too speculative to constitute an adverse action by Defendant Estes.  Even if Plaintiff were granted clemency and received a life with the *possibility* of parole, and even if at that time parole were denied, there is nothing to suggest that the existence of general chronos in his file would be the deciding factor in that decision.  *See* Cal. Code Regs. tit. 15, § 2281 (providing a host of considerations guiding the

80 at 6.)

This Court agrees with other courts in the Ninth Circuit who have similarly held that a general chrono does not, by itself, constitute an adverse action for purposes of retaliation. *See e.g., Jenkins v. Caplan*, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010) (granting summary judgment for defendant where plaintiff failed to present evidence that chrono constituted adverse action); *Williams v. Woodford*, 2009 WL 3823916, *3 (E.D. Cal. 2009) ("the alleged filing of the false administrative chrono fails to state a claim because it is not a sufficient adverse action for a retaliation claim because the chrono was merely informational"); *Samano v. Copeland*, 2008 WL 2168884, *2 (E.D. Cal. 2008) (dismissing retaliation claim for failure to state a claim because issuing a counseling chrono did not constitute an adverse action); *but see Martin v. Desha*, 2017 WL 345202 at 4 (E.D. Cal. Jan. 23, 2017)(finding that allegations that general chrono could impact parole sufficient at the pleading stage to defeat a motion to dismiss). Moreover, Plaintiff has failed to proffer any evidence to explain why this general chrono was an adverse action against him. Although he argues that the general chrono could be used in housing determinations, Plaintiff has not stated any facts to suggest that these chronos did, in fact, negatively impact his housing. Thus, there is no genuine issue of material fact that Defendant Estes' CDC 128–B was not an adverse action against plaintiff sufficient to establish the first element of retaliation.

Because Plaintiff cannot establish the first element of retaliation, Defendant Estes is entitled to Summary Judgment with respect to Plaintiff's claim of retaliation. The Court **RECOMMENDS** that Summary Judgment be **GRANTED** as to this claim and this Defendant.

///

---

determination of whether a California life prisoner is suitable for parole); *see also Hall v. Tehrani*, 2013 WL 1326879 (N.D. Cal. Mar. 29, 2013)(Where a prisoner claimed that a psychologist created a false evaluation in retaliation for filing grievances, the Court ruled this did not constitute an adverse action for purposes of retaliation because the evaluation was only one of many factors considered by the parole board.)

1

## B. Defendant Blahnik

2

### 1. Retaliation Claims Based on General Chronos

3    Defendant Blahnik is the head librarian at RJD and was the librarian for Facility C

4    at RJD when Plaintiff incarcerated there.  (Blahnik Decl. ¶ 1.)  Two of Plaintiff's

5    retaliation claims against Defendant Blahnik are based on Defendant Blahnik filing

6    general chronos regarding Plaintiff.  The first general chrono at issue was filed by

7    Defendant Blahnik on August 15, 2012 and documented an argument with Plaintiff

8    regarding his request that Defendant Blahnik move the copier.  (Blahnik, Ex. 1, Garcia

9    Dep. Ex. 10.)  Plaintiff was not sent to administrative segregation, and did not lose any

10   good time credits, work credits, or yard time as a result of the general chrono filed by

11   Blahnik.  (Garcia Dep. at 122:18-23.)  Plaintiff argues that his request to move the copier

12   was a request to be "provided duplication services in a manner that did not violate his

13   right to confidential correspondence."  (ECF No. 80 at 8.)  He further argues that the

14   general chronos constituted a sufficiently adverse action to support a claim of retaliation.

15   (*Id.*)

16   Plaintiff's second claim of retaliation involves a general chrono that Defendant

17   Blahnik filed on August 23, 2012 because Plaintiff did not show up for his scheduled

18   time in the law library.  (Blahnik Decl. ¶ 6, Ex. 2; Garcia Dep. Ex. 11.)  According to

19   Defendants, Plaintiff admitted in his deposition testimony that he did not spend any time

20   in administrative segregation, and did not lose any good-time credits, work credits, or

21   yard time as a result of the general chrono.  (Garcia Dep. at 126:12-15; 127:17- 24.)

22   According to Plaintiff, Defendants have failed to provide any additional documentation

23   that Plaintiff was, in fact, absent from his scheduled time in the library.  (ECF No. 80 at

24   9.)  He declares the statements in the general chrono are false.  (*Id.*)  Plaintiff argues that

25   the issuance of the general chrono was a false disciplinary action against him "because of

26   his acts of free speech," which is the basis of his retaliation claim against Defendant

27   Blahnik.  (ECF No. 80 at 10.)

28   As discussed above with respect to Defendant Estes, plaintiff has failed to

24

demonstrate a genuine dispute of material fact that Defendant Blahnik took an adverse action against him when he filed these two general chronos.[10]  *See e.g., Williams*, 2009 WL 3823916 at *3 ("the alleged filing of the false administrative chrono fails to state a claim because it is not a sufficient adverse action for a retaliation claim because the chrono was merely informational"); *Samano*, 2008 WL 2168884 at *2 (dismissing retaliation claim for failure to state a claim because issuing a counseling chrono did not constitute an adverse action).  Because Plaintiff cannot establish the first element of retaliation, Defendant Blahnik is entitled to Summary Judgment with respect to Plaintiff's claim of retaliation regarding the filing of general chronos.  The Court **RECOMMENDS** that Summary Judgment be **GRANTED** as to these claims against Defendant Blahnik.

### 2.  Blahnik's Issuance of a Rules Violation Report Against Plaintiff

Plaintiff's third claim of retaliation against Defendant Blahnik is the result of an RVR written by Defendant Blahnik based on "Garcia's cumulative disruptions, refusal to follow instructions, and the failure of the general chronos to alter his behavior."  (ECF No. 63-1 citing Blahnik Decl., Ex. 3; Garcia Decl., Ex. 12.)  This RVR involved an encounter between Defendant Blahnik and Plaintiff on January 28, 2013, wherein Plaintiff demanded that the copier be moved so that Plaintiff could stand next to the copy machine while copies were being made.  (Blahnik Decl. ¶ 7.)  Plaintiff does not dispute that he requested that the copier be moved "up into the very front of the library."  (ECF No. 80 at 11.)  Plaintiff, however, states that he did not confront any of the inmate clerks or demand to stand next to the copy machine.  (*Id.*)  Plaintiff was later found not-guilty of

---

[10] Plaintiff's opposition argues that the location of the copier violates Plaintiff's right to confidential correspondence.  Plaintiff also accuses Defendant Blahnik of keeping copies of inmate's confidential papers and revealing the information contained in those papers to others.  (ECF No. 1 at 7.)  The issue before this Court, however, is retaliation.  Whether Plaintiff's right to confidential correspondence is abridged by the location of the copier or the actions of Defendant Blahnik need not be addressed by this Court.  Regardless of the propriety of the location of the copier, Plaintiff had a First Amendment right to file a grievance stating his concerns.  *Rhodes*, 408 F.3d at 567–68.  Therefore, the only issue to be addressed by this Court is the whether or not Plaintiff was retaliated against for filing these grievances regarding the copy machine and Defendant Blahnik's conduct.

the RVR (Garcia Dep. at 129:4-6) and, as a result, did not lose any work credits or spend any time in administrative segregation because of the RVR.  (Benyard Decl. ¶ 5.)

Defendants argue that Defendant Blahnik is entitled to summary judgment regarding this claim because he had a legitimate correctional purpose for issuing the RVR.  Regarding the fifth *Rhodes* factor, the Ninth Circuit has "made clear that the prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'"  *Bruce*, 351 F.3d at 1289 (quoting *Pratt*, 65 F.3d at 806).  "[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."  *Pratt*, 65 F.3d at 806 (citations and internal quotation marks omitted).  As a result, evidence that the defendant's challenged conduct was motivated by a legitimate correctional goal will defeat a retaliation claim.  *Barnett*, 31 F.3d at 816.

The Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation."  *Barnett*, 31 F.3d at 816; *Rizzo*, 778 F.2d at 532.  When considering this factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482).  The burden is on the Plaintiff to plead and prove the absence of a legitimate correctional goal for the challenged conduct.  *Pratt*, 65 F.3d at 806.

Defendant Blahnik's RVR was based on a number of interactions with Plaintiff that involved disruptions to the law library and disrespectful behavior.  (Blahnik Decl. ¶ 7.)  Although Plaintiff disputes the nature and extent of the dispute, he does acknowledge that he requested the copy machine be moved to the front of the library.  (ECF No. 80 at 11.)  Plaintiff also acknowledges a number of disputes with Defendant Blahnik regarding his use of library services.  (ECF No. 1 at 7, 9.)  Defendants argue that Plaintiff's arguments with prison staff took Defendant Blahnik away from assisting other inmates

and generally caused disruptions.  (Blahnik Decl. ¶ 3.)  As a result, Plaintiff is unable to demonstrate that Defendants' challenged conduct was "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution," which he must establish in order to prevail.  *Watison*, 668 F.3d at 1114–15.  Even if Plaintiff's evidence demonstrates that defendant may have been motivated in part by frustration with Plaintiff's exercise of First Amendment rights, Plaintiff has failed to meet his burden of demonstrating a triable issue of fact whether Defendant Blahnik's issuance of the RVR advanced a legitimate correctional goal.  Defendant Blahnik's declaration demonstrating that his challenged conduct was motivated by, and narrowly tailored to achieve, legitimate correctional goals, in the absence of evidence that he acted arbitrarily or capriciously, defeats Plaintiff's retaliation claim on summary judgment.  *Barnett*, 31 F.3d at 816; *Watison*, 668 F.3d at 1114–15.  As a result, the Court **RECOMMENDS** that Summary Judgment be **GRANTED** as to this claim against Defendant Blahnik.

### C. Defendant Mendoza

Defendant Mendoza signed the RVR issued by Defendant Blahnik as his supervisor.  (Blahnik Decl., Ex. 3; Garcia Decl., Ex. 12.)  Defendant Mendoza did not make a determination of the merits of the RVR, but confirmed that the actions described matched the charges.  (Benyard Decl.) ¶ 3.)  Defendant Mendoza was then responsible for passing along the RVR to the yard captain to be classified.  (*Id.* at ¶¶ 3, 4.)

### 1. Supervisory Liability

To the extent Plaintiff is claiming that Defendant Mendoza has supervisory liability, such a claim is unsupported.  "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§] 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")  "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc).  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  In such circumstances, the supervisor is liable because of his or her own actions or inactions, not for the actions of his or her subordinate.  *See id.*

First, the Court has found that the issuance of the RVR by Defendant Blahnik does not support a claim of retaliation.  Moreover, Plaintiff provides no support for his assertion that Defendant Mendoza orchestrated any retaliation efforts, knew of any fabrication of reports, minimized injuries, or any other culpable conduct.  In opposing summary judgment, Plaintiff cannot rest solely on conclusory allegations.  *Berg*, 794 F.2d at 459.  As a result, this Court **RECOMMENDS** a finding that summary judgment as to any claim of supervisory liability against Defendant Mendoza be **GRANTED**.

## 2. Retaliation Claim for Approving RVR

To the extent that Plaintiff is claiming retaliation by Defendant Mendoza for his own role in reviewing the RVR, this claim is also unsupported because Plaintiff has not come forward with any evidence to support this conclusion.  With respect to the second element of retaliation, Plaintiff must show a causal connection between Defendant Mendoza's retaliatory animus and subsequent injury in any sort of retaliation action. *Hartman v. Moore*, 547 U.S. 250, 259, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).  The requisite causation must be but-for causation, without which the adverse action would not have been taken.  *Id.*  Upon such a showing, the burden shifts to the defendant to show that, even without the motivation to retaliate, he would have taken the same action.  *Id.* at 260.  If there is a finding that retaliation was not the but-for cause of the action at issue,

the claim fails for lack of causal connection, regardless of evidence of some retaliatory animus in the defendant's mind.  *Id.*

First, Plaintiff has not demonstrated a genuine issue of material fact regarding whether Defendant Mendoza acted "because of" Plaintiff's protected conduct.  In order to create an issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual."  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted).

Plaintiff assumes that because he filed inmate grievances against Defendant Blahnik, Defendant Mendoza must have acted in retaliation when he reviewed and forwarded Defendant Blahnik's RVR.  However, Plaintiff has not submitted any evidence that Defendant Mendoza even *knew* that plaintiff filed any grievances against Defendant Blahnik prior to his review of the RVR.  *See Corales*, 567 F.3d at 568.  Nor has Plaintiff submitted any evidence showing that his filing of grievances against Defendant Blahnik was a "substantial" or "motivating" factor in the Defendant Mendoza's alleged actions.  *See Hines*, 108 F.3d at 267–68.  Therefore, drawing all reasonable inferences from the facts before the Court in favor of the Plaintiff, Plaintiff has failed to demonstrate any causal connection between Defendant Mendoza's allegedly retaliatory conduct and Plaintiff's filing of an inmate grievance against Defendant Blahnik.  *See Pratt*, 65 F.3d at 807.

Lastly, and importantly, where the alleged retaliation occurred in the initiation of the grievance, those involved in the subsequent hearing process, as well as the review process, are not liable based solely on their role in the process.  *Witkin v. Swarthout*, 2013 WL 6054451, at *11 (E.D. Cal. Nov. 15, 2013).  Because Plaintiff cannot show that Defendant Mendoza reviewed and forwarded the RVR in retaliation for filing an inmate

grievance against Defendant Blahnik, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Mendoza as to the retaliation claim.

### D. Defendant Flores

#### 1. Retaliation Claim Generally

On July 21, 2013, after Defendant Flores declined to process another inmates' grievance as "confidential," Plaintiff threatened to have every inmate on the yard process inmate appeals as confidential correspondence and to file mass lawsuits against Flores. (Flores Decl. Ex. 1.)  Plaintiff does not dispute that he informed Defendant Flores that he was going to "file written grievance with the CDCR jointly/together with other inmates for these violations by him of our civil rights."  (ECF No. 80 at 54.)

By way of background, 15 C.C.R. § 3141 allows for confidential correspondence between prisoners and various categories of individuals.  Notably absent from this list are prison grievances.  Plaintiff states that the grievances contained confidential information and could contain "inmate personal information about their criminal history, background, or medical conditions," which, "if disclosed, is consider by prison administrators to present a clear threat to inmate, others, or institutional safety and security."  (ECF No. 80 at 53.)  However, the requisite characteristic for a confidential correspondence is not the *contents*, but the *recipient*.  As a general matter, there is no right to privacy in the mail in prison, *United States v. Choate*, 576 F.2d 165 (9th Cir. 1978), and "prison officials may examine the communications of a prisoner without infringing upon his rights."  *United Sates v. Wilson*, 447 F.2d 1, 8 n. 4 (9th Cir. 1971).  As a result, Defendant Flores had a good faith basis to deny the processing of Inmate Lozano's grievances as confidential correspondence.

Defendants argue that Defendant Flores is entitled to summary judgment regarding this claim because he had a legitimate correctional purpose for issuing the RVR.[11]

---

[11] Defendants also argue that Plaintiff does not have a First Amendment right to assist a fellow inmate, and thus, he cannot sustain a claim for retaliation.  The Court does not reach the merits of this issue, but

Regarding the fifth *Rhodes* factor, the Ninth Circuit has "made clear that the prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'"  *Bruce*, 351 F.3d at 1289 (quoting *Pratt*, 65 F.3d at 806).  "[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."  *Pratt*, 65 F.3d at 806 (citations and internal quotation marks omitted).  Accordingly, evidence that Defendant Flores's challenged conduct was motivated by a legitimate correctional goal will defeat a retaliation claim.  *Barnett*, 31 F.3d at 816.

In light of the regulations on confidential correspondence, Plaintiff's insistence that Defendant Flores process inmate Lozano's grievance as confidential, and Plaintiff's later threats to instigate other inmates to file grievances against Defendant Flores demonstrates an attempt to coerce Defendant Flores to act in contravention to the regulations.  The Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation."  *Id.*; *see also Rizzo*, 778 F.2d at 532.  When considering this factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482).

After his interaction with Plaintiff, Defendant Flores issued an RVR noting that Plaintiff was misusing the prison appeals process to intimidate prison staff.  (Flores Decl. ¶ 3.)  Defendant Flores characterized Plaintiff as disrespectful, and found that he was disrupting the orderly operation of the institution.  Cal. Code Regs. tit. 15, § 3004(b) (2013).  Plaintiff does not dispute that he approached Defendant Flores and threatened to instigate the filing of multiple grievances with other inmates.  (ECF No. 80 at 54.)  Given

---

instead discusses the uncertainty of Ninth Circuit precedent in the section on Qualified Immunity.  *See* section IV(D)(2), below.

Plaintiff's admitted conduct, and the fact that Plaintiff threatened Defendant Flores to act in violation of the regulations, Plaintiff is unable to demonstrate that Defendant Flores's challenged conduct was "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution," which he must establish in order to prevail.  *Watison*, 668 F.3d at 1114–15.

Even if Plaintiff's evidence demonstrates that the defendant may have been motivated in part by frustration with Plaintiff's exercise of First Amendment rights, plaintiff has failed to meet his burden of demonstrating a triable issue of fact whether defendant's issuance of the subject RVR advanced a legitimate correctional goal. Defendant's evidence demonstrating that his challenged conduct was motivated by, and narrowly tailored to achieve, legitimate correctional goals, in the absence of evidence that defendant acted arbitrarily or capriciously, defeats Plaintiff's retaliation claim on summary judgment.  *Barnett*, 31 F.3d at 816; *Watison*, 668 F.3d at 1114–15.  As a result, the Court **RECOMMENDS** that Summary Judgment be **GRANTED** as to this claim against Defendant Flores.

## 2.  Qualified Immunity

Even if Defendant Flores could be shown to have had retaliatory motive in classifying this RVR, he is entitled to qualified immunity.  Qualified immunity shields governmental officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).  In *Saucier v. Katz*, 533 U.S. 194, (2001), the Supreme Court established a two-prong test for determining whether qualified immunity applies.  "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged."  *Id.* at 200.  If no constitutional right was violated, the inquiry ends and the defendant prevails.  *Id.*  The second inquiry, assuming a violation is established, asks the question whether, "in light of the specific context of the case," the constitutional right was so clearly established that a reasonable official would understand

that what he was doing violated that right.  *Id.* at 201-02.

When determining what constitutes clearly established law, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Jones v. Cty. of Los Angeles*, 802 F.3d 990, 999 (9th Cir. 2015) (quoting *Calabretta v. Floyd*, 189 F.3d 808, 812 (9th Cir. 1999)).  "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent ... placed the statutory or constitutional question beyond debate."  *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (internal quotation marks omitted)).  Ultimately, even though qualified immunity is an affirmative defense, the plaintiff "bears the burden of proving that the rights [he] claims were 'clearly established' at the time of the alleged violation."  *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (quoting *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998)).  And as the Supreme Court has admonished, "courts–and the Ninth Circuit in particular–[must] not . . . define clearly established law at a high level of generality."  *Sheehan*, 135 S.Ct. at 1775–76 (quoting *Ashcroft*, 131 S.Ct. at 2084).

Here, there are conflicting accounts of whether Plaintiff was asking for confidential correspondence for a fellow inmate, or himself.  Plaintiff states in his opposition that Defendant Flores refused to process any inmate grievances, including Plaintiff's, as confidential correspondence.   (ECF No. 80 at 54.)   Plaintiff argues that this is a violation of *his* rights because he "was going to file" a written grievance jointly with other inmates.  (*Id.*)  Defendants point to Plaintiff's testimony during his deposition that he was advocating for another inmate who was trying to file his grievance.  (ECF No.

83 citing Garcia Dep. II at 209:4-23; *see also* Garcia Dep. II at 217:17-20, 222:11-223:2 confirming that Garcia had covered all his testimony regarding Flores.)  Defendants argue that Plaintiff also testified that he planned to help other inmates file grievances against Defendant Flores if he refused to process grievances as confidential correspondence. (ECF No. 83 citing Garcia Dep. II at 212:18-213:4; *see also* Flores Decl. ¶ 3 (Garcia "threatened to orchestrate mass lawsuits by other inmates against me").  As Defendants argue, allegations at the summary judgment stage that contradict deposition testimony do not create an issue of fact for purposes of summary judgment.  *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999); *Van Asdale v. Inernational Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  Because Plaintiff has previously stated that he was retaliated against for providing assistance to a fellow inmate, and only in his opposition states that he was advocating for himself, the Court will analyze qualified immunity for a situation in which Plaintiff was assisting a fellow inmate.

The Ninth Circuit in *Blaisdell* considered this circuit's precedent regarding whether an inmate is engaged in constitutionally protected activity when serving a prison official with a summons and complaint on another inmate's behalf.  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1240 (9th Cir. 2013).  In that case, the plaintiff pointed to a prisoner's right of meaningful access to courts, and the right of association to support his claim that he was involved in constitutionally protected activity when assisting a fellow inmate.  *Id.* at 1242-43.  With respect to the argument that the defendants violated the plaintiff's right of access to the court, the Ninth Circuit held that "it is far from clear that the right to provide legal advice follows from a right to receive legal advice, a crucial leap were Blaisdell to have standing to claim the disciplinary charge impinged on the exercise of *his* rights.  *Id.* at 1245 (internal citations omitted)(emphasis in original).

The Court then went on to discuss the argument regarding Blaisdell's freedom of association, based on the Ninth Circuit case *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985).  In *Rizzo*, the Ninth Circuit held that "a 'jailhouse lawyer' assisting other inmates with habeas petitions and other federal actions" was engaging in expressive association

under the First Amendment.  778 F.2d at 529.  The Court noted that *Rizzo*'s "holding is difficult to square with the Supreme Court's subsequent teachings on prisoners' rights," which included the fact that the Court overruled a decision—relying on *Rizzo*—which held that an inmate law clerk had heightened First Amendment protection because he was a purveyor of legal assistance.  *See Murphy v. Shaw*, 195 F.3d 1121, 1124–25 (9th Cir. 1999), *overruled by Shaw*, 532 U.S. at 227, 230–32, 121 S.Ct. 1475.  The Ninth Circuit clarified that *Shaw* "fell short of holding that prisoners have no First Amendment rights when assisting each other with legal matters."  *Blaisdell*, 729 F.3d at 1247.

While *Shaw* might be read as allowing for a First Amendment right of another inmate to communicate legal advice to another inmate, the Court cannot say that such a conclusion was clearly established in 2012 when Defendant Flores issued this RVR against Plaintiff.  Although *Blaisdell* postdates Defendants' conduct, *Shaw* – a case that casts doubt on Plaintiff's ability to bring a retaliation claim for his conduct assisting another inmate – has existed since 2001 and clearly repudiated the Ninth Circuit's prior reasoning.  *See also Freeman v. Lyons*, 2016 WL 750434, at *5 (C.D. Cal. Jan. 8, 2016), report and recommendation adopted, 2016 WL 756463 (C.D. Cal. Feb. 25, 2016) (holding that as of 2012, a constitutional prohibition on retaliation for assisting another inmate in filing an administrative grievance was not clearly established for purposes of qualified immunity).  Because the law on retaliation with respect to conduct on behalf of another prisoner was unclear at the time Defendant Flores issued this RVR, the Court **RECOMMENDS** a finding that Defendant Flores is entitled to qualified immunity on this claim of retaliation.

### 3.  Failure to Exhaust

Defendants also argue that Plaintiff failed to exhaust his administrative remedies on his retaliation claim against Flores.[12]  (ECF No. 63-1 at 34.)  The Prison Litigation

---

[12] Defendants make this argument with respect to a claim that involves not only Defendant Flores, but also Defendant Hernandez and Beynard.  (ECF No. 63-1 at 35.)  The Court has separated the analysis of

Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525, and to encompass inmate suits about both general circumstances and particular episodes of prison life—including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies before he filed suit, even if he fully exhausts while the suit is pending).

Defendants contend that Plaintiff failed to properly exhaust his administrative remedies as to his claim of retaliation against Defendant Flores, having failed to appeal the related inmate grievances. (Self Decl. ¶¶ 7(b), 7(c), 8.) Defendants must also prove that "there was an available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). M. Voong, Chief of the Office of Appeals, filed a declaration in support of Defendants' Motion for Summary Judgment. (ECF No. 63-13.) In this declaration, M. Voong describes the administrative grievance procedure in the California Department of Corrections and Rehabilitation, which sufficiently demonstrates that there was an available remedy, and Plaintiff had opportunity to know of that remedy. (*Id.* at ¶¶ 3-7.)

---

this claim by each Defendant to avoid confusion. This analysis will be reiterated as to Defendants and Beynard and Hernandez below in sections IV(E)(2) and IV(G)(2), respectively.

Once the defendant meets that burden, the plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Defendants also note that Plaintiff has successfully exhausted his administrative remedies in numerous prisoner appeals, supporting a finding that he knew of the additional levels of review, yet failed to utilize them as to this claim. (*See* M. Voon Decl. ¶¶9(a)-(g).)

Plaintiff argues in response that Defendants Olson, Ramirez and Seibel withheld, sequestered or destroyed his grievance (ECF No. 1 at 15), which denied him the opportunity to properly exhaust his administrative remedies on this issue. (ECF No. 80 at 59.) But Plaintiff puts forth no evidence or facts to support such a conclusion. To avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg*, 794 F.2d at 459. Plaintiff has failed to rebut Defendants' showing that he had an available remedy, and failed to use it in this instance. He also failed to meet his showing that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. As such, the Court **RECOMMENDS** that Defendants motion for summary judgment based on failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) be **GRANTED** as to Plaintiff's claim against Defendant Flores.

### E. Defendant Benyard

#### 1. Review of January 28, 2013 RVR Issued by Defendant Blahnik

After Defendant Mendoza reviewed Defendant Blahnik's RVR, he passed it along to the yard captain, Defendant Benyard, to be classified. (Benyard Decl. ¶ 3.) Defendant Benyard was then required to classify the RVR as administrative or serious, and determine whether or not Plaintiff should be sent to administrative segregation, pending a hearing. (*Id.* at ¶ 4.) According to Defendants, because the RVR involved disrespect or disobedience toward staff, Benyard was required to classify the RVR as serious. (Benyard Decl. ¶ 4; *see* Cal. Code Regs. tit. 15, § 3315(a)(3)(H) (2013). Benyard

37

determined, however, that it was not appropriate to send Plaintiff to administrative segregation pending a hearing on the RVR.  (Benyard Decl. ¶ 6.)

As above, where the alleged retaliation occurred in the initiation of the grievance, those involved in the subsequent hearing process, as well as the review process, are not liable based solely on their role in the process.  *Witkin*, 2013 WL 6054451 at *11.  Moreover, even drawing all reasonable inferences from the facts before the court in favor of the Plaintiff, Plaintiff has failed to demonstrate any causal connection between Defendant Benyard's allegedly retaliatory conduct and Plaintiff's filing of an inmate grievance against Defendant Blahnik.  *See Pratt*, 65 F.3d at 807.  Nor has Plaintiff submitted any evidence showing that his filing of a grievance against Defendant Blahnik was a "substantial" or "motivating" factor in the Defendant Benyard's alleged actions.  *See Hines*, 108 F.3d at 267–68.

Plaintiff assumes that because he filed inmate grievances against Defendant Blahnik, Defendant Benyard must have acted in retaliation when he classified his RVR.  However, Plaintiff has not submitted any evidence that Defendant Benyard even *knew* that Plaintiff filed any grievance against Defendant Blahnik prior to his review of the RVR.  *See Corales*, 567 F.3d at 568.  Defendant Benyard ultimately concluded that the RVR did not warrant placement in administrative segregation—an action that undermines any suggestion that he acted with retaliatory intent.

Because Plaintiff cannot show that Defendant Benyard classified the RVR as serious in retaliation for filing an inmate grievance against Defendant Blahnik, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Benyard as to this retaliation claim.

### 2.  Review of July 21, 2013 RVR Issued by Defendant Flores

On July 31, 2013, after receiving the RVR issued by Defendant Flores regarding allegations that Plaintiff made threats to orchestrate mass lawsuits against him, Defendant Benyard classified the RVR as a serious.  (Benyard Decl. ¶ 8.)  He did not send Plaintiff to administrative segregation.  (*Id.*)  As above, where the alleged retaliation occurred in

38

the initiation of the grievance, those involved in the subsequent hearing process, as well as the review process, are not liable based solely on their role in the process. *Witkin*, 2013 WL 6054451 at *11.

Moreover, as above, Plaintiff has failed to rebut Defendants' showing that he did not properly exhaust his administrative remedies regarding his claim of retaliation against Defendant Beynard with respect to the RVR filed by Defendant Flores prior to bringing this action. (*See* section IV(D)(3), above for a detailed discussion of Plaintiff's failure to exhaust this claim). Thus, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to this claim against Defendant Beynard both because he cannot be liable solely for his role in reviewing the RVR, and because Plaintiff has not exhausted his administrative remedies as to this claim.

### 3. Removal of Plaintiff from MAC

Plaintiff argues that Defendant Benyard retaliated against him when he removed him from the Men's Advisory Council ("MAC"). (ECF No. 80 at 58.) Defendants argue that Defendant Benyard had a legitimate correctional purpose in removing Plaintiff from the MAC because Plaintiff had numerous pending disciplinary proceedings and insisted on raising his disciplinary matters and prison appeals at the MAC meetings. (ECF No. 63-1 at 27.) Defendants further explain that Plaintiff's disciplinary history and his disruption of the MAC interfered with the orderly operation of the prison, justifying his removal. (*Id.*)

The Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation." *Barnett*, 31 F.3d at 816; *Rizzo*, 778 F.2d at 532. When considering this factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482). The burden is on the Plaintiff to plead and prove the absence of a legitimate correctional goal for the challenged conduct. *Pratt*, 65 F.3d at 806.

1    The Court finds that Defendant Benyard had a legitimate correctional goal in

2    removing Plaintiff from MAC, as they have put forth evidence that he was removed in

3    the interest of "preserving institutional order, discipline, and security," which are

4    "legitimate penological goals that . . . will defeat a claim of retaliation." *Barnett*, 31 F.3d

5    at 816; *Rizzo*, 778 F.2d at 532.  Plaintiff has not put forth any evidence that there was an

6    absence of a legitimate correctional goal for the challenged conduct. *Pratt*, 65 F.3d at

7    806.

8        California regulations state that "[an] inmate's eligibility for . . . retention as an

9    inmate advisory council representative shall be limited only by the inmate's ability to

10   effectively function in that capacity as determined by the warden."  Cal. Code Regs. tit.

11   15, §3230(b) (2013).  Moreover, Plaintiff did have multiple pending RVRs when he was

12   removed from MAC.  (Benyard Decl., Exs. 2, 3.)  While a disciplinary infraction will not

13   *necessarily* bar an inmate from serving as a council representative, the warden does have

14   discretion to bar an inmate from serving as a representative if he determines that such an

15   infraction is "detrimental to the council's effectiveness." *Id.* at (b)(2).  Moreover, the

16   regulations specifically state that a "representative's misbehavior while conducting

17   council business or acting under the guise of conducting council business shall be cause

18   for disciplinary or other action." *Id.* at (b)(3).

19       Defendant Benyard states in his declaration that Plaintiff repeatedly raised his own

20   disciplinary issues and grievances during the MAC meetings.  (Garcia Dep. at 139:7-12;

21   Benyard Decl. ¶ 10.)  This behavior prevented the MAC from addressing issues

22   important to the entire general population of the prison.  (Benyard Decl. ¶ 10.)  Because

23   MAC serves a larger purpose within the prison system, the Court finds that Defendant

24   Benyard had a legitimate correctional goal in removing Plaintiff from MAC when his

25   behavior became so disruptive as to frustrate the ultimate purpose of the program.  The

26   Court also notes that Plaintiff was eventually returned to his role on MAC when his

27   RVRs were dismissed, so any removal was temporary.  (Garcia Dep. at 203:13-204:2.)

28   As such, the Court **RECOMMENDS** that summary judgment be **GRANTED** as to this

claim for Defendant Benyard.

### F. Defendant Cariman

Plaintiff's claim against Defendant Cariman involves his refusal to obey Defendant Cariman's order to either take his medication or return to his cell. (Cariman Decl. ¶ 5.) As a result of this argument with Defendant Cariman, Plaintiff disrupted the pill line and prevented other inmates from getting their medication for fifteen minutes. (*Id.*) Defendants argue that this demonstrates that Plaintiff disobeyed a direct order, was disrespectful, and disrupted the orderly operation of the institution. Cal. Code Regs. tit. 15, §§ 3004(b), 3005(b) (2013). Defendants further note that because Cariman knew Plaintiff was not taking his psychiatric medicine, he was concerned that Plaintiff might become violent. (Cariman Decl. ¶ 6.) Therefore, according to Defendants, Defendant Cariman's act of handcuffing Plaintiff was necessary to preserve the safety of the surrounding staff and inmates. (*Id.*) On this basis, Defendants argue that Defendant Cariman had a legitimate correctional purpose in handcuffing Plaintiff and in issuing the RVR. *Barnett*, 31 F.3d at 815-16.

Regarding the fifth *Rhodes* factor, the Ninth Circuit has "made clear that the prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'" *Bruce*, 351 F.3d at 1289 (quoting *Pratt*, 65 F.3d at 806). "[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Pratt*, 65 F.3d at 806 (citations and internal quotation marks omitted). Accordingly, evidence that defendant's challenged conduct was motivated by a legitimate correctional goal will defeat a retaliation claim. *Barnett*, 31 F.3d at 816.

The Ninth Circuit has held that "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation." *Barnett*, 31 F.3d at 816; *Rizzo*, 778 F.2d at 532. When considering this factor, courts should "'afford appropriate deference

41

and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482).  Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for defendant's challenged conduct.  *Pratt*, 65 F.3d at 806.

Plaintiff contends that the version of events as Defendant Cariman states them are false.  (ECF No. 80 at 51.)  He states that he complied with taking his medication, and showing his I.D.  (*Id.* at 48- 49.)  He states that he informed Defendant Cariman that he had filed a grievance about him the previous week,[13] to which Defendant Cariman responded, "Oh yeah . . . you wrote me up! Then turn around and cuff up!"  (*Id.* at 48.)  Plaintiff states that he complied with this order, was handcuffed, and placed in a "metal cage."  (*Id.*)  He then argues that Defendant Cariman wrote a false RVR regarding this incident.  (*Id.* at 50.)

First, Plaintiff's filing of a grievance against Defendant Cariman is protected First Amendment conduct.  *Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.") (citing *Brodheim*, 584 F.3d at 1269).  The retaliatory actions Plaintiff alleges— receiving a false RVR and placement in a holding cell—would chill or silence a person of ordinary firmness.  *See Rhodes*, 408 F.3d at 568 ("the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."); *see also Watison*, 668 F.3d at 1115 (finding that inmate had stated a retaliation claim where he had alleged that the prison officer filed a false disciplinary charge against him, placed him in administrative segregation, and interfered with his parole hearing).

Finally, an issue of fact remains regarding whether or not Defendant Cariman had a legitimate correctional purpose in issuing the RVR, as Plaintiff and Defendant Cariman

---

[13] The Form 22 Appeal that Plaintiff filed against Defendant Cariman is attached to Defendants' Motion for Summary Judgment, Declaration of Christopher Findley, Ex. 12.

have different versions of events.  If, as Plaintiff states, he was compliant in taking his medication, compliant in showing his I.D., and no altercation ensued between himself and Defendant Cariman, that undermines the conclusion that Plaintiff disobeyed a direct order, was disrespectful, and disrupted the orderly operation of the institution.  However, if Plaintiff refused to take his medication, refused to show his I.D., and engaged in a heated argument with Defendant Cariman that delayed the progression of the pill line for other inmates, then it would seem to the Court that Defendant Cariman had a legitimate correctional purpose for handcuffing Plaintiff, removing him from that area, and filing the RVR regarding this conduct.  *See Rizzo*, 778 F.2d at 532 (the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution ...").

At the summary judgment stage, however, the Court cannot resolve issues of material fact.  Based on the contradictory testimony, the Court finds that genuine issues of material fact exist regarding the nature and extent of the interaction between Plaintiff and Defendant Cariman.  Accordingly, because conflicting factual accounts of the interaction, in particular whether Plaintiff complied with taking his medication, showed his ID upon being ordered to do so, and the nature of his interaction with Defendant Cariman, reveal genuine issues of material fact, it is **RECOMMENDED** that the Court **DENY** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim against Defendant Cariman.

### G. Defendants Hernandez and Rutledge

Plaintiff's claim against Defendant Hernandez arises from the fact that Defendant Hernandez signed off on the RVR issued by Defendant Flores based on the incident involving allegations that Plaintiff attempted to instigate mass lawsuits against Defendant Flores.  (Flores Decl., Ex. 1; Garcia Dep., Ex. 22.)  Defendant Rutledge signed off on the RVR issued by Defendant Cariman regarding Plaintiff's conduct in the pill line. (Cariman Decl. ¶ 6.)

///

### 1.  Supervisory Liability

To the extent Plaintiff is claiming that Defendants Hernandez and Rutledge have supervisory liability, such a claim is unsupported.  "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§] 1983." *Taylor*, 880 F.2d at 1045 (citations omitted); *see also Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey*, 693 F.3d at 916.  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1206-07.  In such circumstances, the supervisor is liable because of his or her own actions or inactions, not for the actions of his or her subordinate.  *See id.*

First, the Court has found that the issuance of the RVR by Defendants Flores does not support a claim of retaliation.  Moreover, Plaintiff provides no support for his assertion that Defendant Hernandez or Defendant Rutledge orchestrated any retaliation efforts, knew of any fabrication of reports, minimized injuries, or any other culpable conduct.  In opposing summary judgment, Plaintiff cannot rest solely on conclusory allegations.  *Berg*, 794 F.2d at 459.  As a result, this Court **RECOMMENDS** a finding that summary judgment as to any claim of supervisory liability against Defendant Hernandez and Defendant Rutledge be **GRANTED**.

### 2.  Retaliation Claim for Approving RVR

To the extent that Plaintiff is claiming retaliation by Defendant Hernandez or

Defendant Rutledge for their roles in reviewing the RVRs, this claim is also unsupported because Plaintiff has not come forward with any evidence to support such a claim. With respect to the second element of retaliation, Plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. *Hartman*, 547 U.S. at 259. Upon a prima facie case of retaliatory harm, the burden shifts to the defendant to demonstrate that even without the impetus to retaliate, he would have taken the action complained of. *Id.* at 260. If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. *Id.*

Where the alleged retaliation occurred in the initiation of the grievance, those involved in the subsequent hearing process, as well as the review process, are not liable based solely on their role in the process. *Witkin*, 2013 WL 6054451 at *11. Moreover, Plaintiff has not demonstrated a genuine issue of material fact regarding whether Defendant Hernandez or Defendant Rutledge acted "because of" Plaintiff's protected conduct. In order to create an issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual." *Corales*, 567 F.3d at 568 (internal citation and emphasis omitted).

Drawing all reasonable inferences from the facts before the Court in favor of the Plaintiff, he has failed to demonstrate any causal connection between Defendant Hernandez's allegedly retaliatory conduct and Plaintiff's filing of an inmate grievance

against Defendant Flores.[14]  *See Pratt*, 65 F.3d at 807.  Nor has Plaintiff demonstrated a causal connection between Defendant Rutledge's allegedly retaliatory conduct and Plaintiff's filing of an inmate grievance against Defendant Cariman.  *Id.*

Moreover, Plaintiff has not submitted any evidence showing that his filing of a grievance against Defendant Flores was a "substantial" or "motivating" factor in Defendant Hernandez's alleged actions, or that his filing of a grievance against Defendant Cariman was a "substantial" or "motivating" factor in Defendant Rutledge's alleged actions.  *See Hines*, 108 F.3d at 267–68.  Plaintiff assumes that because he filed inmate grievances against Defendants Flores and Cariman, Defendants Hernandez and Rutledge *must* have acted in retaliation when they reviewed and forwarded these RVRs. But Plaintiff has not submitted any evidence that Defendants Hernandez or Rutledge even knew that he filed any grievances against Defendant Flores or Defendant Cariman prior to their review of the RVRs.  *See Corales*, 567 F.3d at 568.

Because Plaintiff cannot show that Defendants Hernandez or Rutledge reviewed and forwarded the RVR in retaliation for filing an inmate grievance against Defendant Flores or Defendant Cariman, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Hernandez and Defendant Rutledge as to these retaliation claims.

### H. Defendants Olsen and Ramirez

In 2013, Defendants Olson and Ramirez were appeals coordinators at RJD.  (Olson Decl. ¶ 1; Ramirez Decl. ¶ 1.)  Plaintiff submitted an appeal alleging Flores, Hernandez, and Benyard had retaliated against him by filing the RVR which referred to his attempts to have other inmates file mass lawsuits against Flores.  (Self Decl. ¶ 7(a).)  On September 4, 2013, the appeals coordinators screened the appeal because Plaintiff had not

---

[14] Moreover, as above, Plaintiff has failed to rebut Defendants' showing that he did not properly exhaust his administrative remedies regarding his claim of retaliation against Defendant Hernandez with respect to the RVR filed by Defendant Flores prior to bringing this action.  (*See* section IV(D)(3), above for a detailed discussion of Plaintiff's failure to exhaust this claim).

1   attached the RVR on which it was based.  (Self Decl. ¶ 7(b); *see also* Olson Decl. ¶ 8;

2   Ramirez Decl. ¶ 8.)  Plaintiff submitted the appeal a second time, but did not include the

3   rights and responsibility statement as required, so it was again screened and returned.

4   (Self Decl. ¶ 7(c).)  Plaintiff never resubmitted the appeal, or otherwise exhaust his

5   administrative remedies against Flores, Hernandez, or Benyard arising from Flores' RVR

6   against him.  (Self Decl. ¶ 8.)  Plaintiff claims that these Defendants retaliated against

7   him because they screened out his appeals because he did not meet time constraints,

8   which served to "cover up the misconduct" he was "going to uncover on these

9   defendants, and . . . to further the acts of retaliation."  (Garcia Dep. at 244:12-245:6.)  He

10  also alleges that the appeals coordinators or other unnamed officers lost or destroyed his

11  appeal that he returned with the RVR.  (ECF No. 80 at 59.)

12      Construing the record in the light most favorable to Plaintiff, the evidence

13  demonstrates that, in response to Plaintiff's exercise of his right to file a grievance,

14  defendants rejected Plaintiff's appeal.  Although this hardly represents a pattern or

15  practice, it could support the first and third elements of Plaintiff's retaliation claim, in

16  that these defendants responded adversely to a grievance submitted by Plaintiff in the

17  exercise of his First Amendment rights.  *See Rhodes*, 408 F.3d at 567-68.  Missing,

18  however, is any evidence to support Plaintiff's allegations that these Defendants'

19  challenged conduct was motivated by retaliation against Plaintiff *because* he exercised

20  his First Amendment rights.  This second element of a retaliation claim requires evidence

21  of a causal connection between the first and third elements.  *See id.*

22      Both Defendants submit sworn declarations explaining how they processed this

23  appeal.  The appeals coordinators screened Plaintiff's first appeal of Defendant Flores'

24  alleged acts because Plaintiff failed to attach the disciplinary documents that were the

25  basis of his appeal.  (Olson Decl. ¶ 8; Ramirez Decl. ¶ 8.)  Plaintiff was appealing

26  Defendant Flores' alleged retaliatory act in issuing him an RVR.  (*Id.*)  Plaintiff, however,

27  did not attach the RVR, which prevented the appeals coordinators from adjudicating the

28  appeal.  (*Id.*)  Defendants assert that Defendant Olson and Defendant Ramirez followed

policy in screening an appeal missing necessary documents.  Cal. Code Regs. tit. 15, § 3084.3 (2013).

The next time he submitted the appeal, Plaintiff failed to attach a "rights and responsibility statement" to his appeal against Defendant Flores.  (Olson Decl. ¶ 9; Ramirez Decl., ¶ 9.)  Plaintiff is required to attach a rights and responsibility statement to every staff complaint.  *See* Cal. Code Regs. tit. 15, § 3084.9(i) (2013).  The appeal  was therefore missing a necessary document, and the appeals coordinators were  required to screen the appeal.  Cal. Code Regs. tit. 15, § 3084.3 (2013).  Thus, Defendants, as the moving parties, have met their burden of submitting authenticated evidence showing that they properly processed Plaintiff's appeals in accordance with CDCR regulations, and that the rejection and/or cancellation of each matter was in furtherance of legitimate penological goals.  *See Celotex*, 477 U.S. at 323.

The burden therefore shifts to Plaintiff, as the nonmoving party, to establish that there is a genuine issue for trial.  *Celotex*, 447 U.S. at 324.  It is Plaintiff's burden to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," *Pratt*, 65 F.3d at 808, that is, "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals," *id.* at 806 (citing *Rizzo*, 778 F.2d at 532).  It is not Plaintiff's burden, on summary judgment, to conclusively demonstrate retaliation, only to "point to some facts in the record that demonstrate a genuine issue of material fact[.]"  *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citations omitted).

Significantly, however, Plaintiff has not identified any specific conduct that demonstrates Defendants' retaliatory motive against Plaintiff because he was utilizing the appeals process.  Instead, Plaintiff makes conclusory statements that Defendants lost or destroyed his appeal.  (ECF No. 80 at 59.)  First, such a conclusory statement is insufficient to withstand summary judgment.  Second, Plaintiff has still failed to show that any error by these Defendants was in response to the filing of his complaint.  This is especially apparent given the fact that these appeals coordinators have affirmatively

processed thousands of appeals throughout their tenure.  (Olson Decl. ¶ 2; Ramirez Decl. ¶ 2.)  Moreover, Defendants provide Plaintiff's testimony wherein he acknowledges that these Defendants processed "most" of his appeals.  (Garcia Dep. at 255:10-18.)

Plaintiff has not alleged a retaliatory pattern or practice by these individuals—but has indicated that this *specific* appeal was screened by these individuals as retaliation— without providing any facts or evidence to support this conclusion.  Thus, Plaintiff has failed to allege any "specific facts showing retaliation because of the exercise of [plaintiff's] constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).   For these reasons, this court is compelled to **RECOMMEND** that Defendants' motion for summary judgment be **GRANTED** as to this claim for Defendants Olson and Ramirez.

## I.  Defendant Siebel

Defendant K. Siebel was the Chief Deputy Warden, and in that capacity reviewed appeals at the second level.  (Siebel Decl. ¶¶ 1, 2.)  According to her declaration, she did not participate in receiving first level appeals, processing first level appeals, or screening first level appeals.  (*Id.* at ¶ 2.)  Because Defendant Siebel could not have been involved in the screening of Plaintiff's appeal against Defendant Flores (which never proceeded past the first level of review), Defendants argue that she is entitled to summary judgment. Plaintiff does not discuss Defendant Siebel in his opposition to Defendants' Motion for Summary Judgment.  As a result, he does not put forth any evidence undermining Defendants' claim that Defendant Siebel was not involved in the screening of this appeal, and therefore, could not have retaliated against Plaintiff in this regard.  Because Defendants have put forth evidence demonstrating that Defendant Siebel was not involved in the screening of Plaintiff's appeal that forms the basis of Plaintiff's retaliation claim, this Court **RECOMMENDS** a finding that summary judgment be **GRANTED** as to Defendant Siebel.

## V.  PLAINTIFF'S ACCESS TO LEGAL DOCUMENTS

Plaintiff requests a further continuance to oppose Defendants' motion because he is

in poor mental health and he does not have access to his legal property.  (ECF No. 80 at 19, 34, 62.)  Plaintiff states that he has "tried to the best of [his] abilities to access [his] personal property."  (*Id.* at 62.)  Plaintiff states that, "due to circumstances beyond [his] control, [he has] been able (sic) to do so and prison staff has possession of such legal documents."  (*Id.*)  In response, Defendants provide declarations from T. Pfeiffer and Sunderland.  (ECF Nos. 83-2 ("Pfeiffer Decl."), 83-3 ("Sunderland Decl.")

### A. Background

T. Pfeiffer is a Receiving and Release ("R&R") Correctional Sergeant at Mule Creek State Prison in Ione, California, where Plaintiff is housed.  (Pfeiffer Decl. ¶ 1.)  He oversees the department that issues inmates their property, including legal materials, that arrive at Mule Creek State Prison when an inmate is transferred there.  (*Id.* at ¶ 2.)  J. Sunderland is a Correctional Officer in the R&R department at Mule Creek State Prison. (Sunderland Decl.  ¶ 1.)

Plaintiff was transferred to Mule Creek State Prison on September 7, 2016, along with his two boxes of property and five boxes of legal materials.  (Pfeiffer Decl. ¶ 3; Sunderland Decl. ¶ 3.)  Plaintiff was first brought to the R&R Department by Correctional Officer W. Gossett on September 21, 2016 to receive his allowable property. (Sunderland Decl. ¶ 3.)  Sunderland states that he "reviewed [Plaintiff's] property and noted that [he] was transferred with more than three electric appliances."  (*Id.*)  Plaintiff's property included a TV, fan, hot pot, radio, and a CD player.  (*Id.* at ¶ 4.)  Sunderland "told [Plaintiff] that he was only allowed to have a maximum of three (3) appliances per the Department Operation Manual section 54030, Authorized Personal Property Schedule, registerable property for level IV inmates, because of his Custody Level (Level 4) and his being housed on A-Facility."  (*Id.* at ¶ 4.)

According to Sunderland, Plaintiff responded by saying "You guys can't take my appliances from me because they are all medical."  (*Id.*)  Sunderland states that he then began researching this claim that his appliances were allowed because they were needed for medical reasons.  (*Id.*)  Sunderland states that he "reviewed the prison electronic data

bases (SOMS and DECS), and [he] contacted the prison's medical department in an attempt to verify [Plaintiff's] statements." (*Id.* at ¶ 5.)  Sunderland states that he "could find no evidence to verify [Plaintiff's] statements that all of his appliances were allowable for medical purposes." (*Id.*)  Sunderland then asked Plaintiff if he had any documentation supporting his statement that all of his appliances were allowable for medical reasons. (*Id.*)  According to Sunderland, Plaintiff had no such documentation. (*Id.*)

At that time, Plaintiff asked for something in writing from the director stating that he was only allowed three appliances. (*Id.*)  Sunderland states that he then brought this issue to the attention of Correctional Sergeant J. McNitt, who informed Plaintiff that prison regulations limited his allowable appliances to three. (*Id.* at ¶ 6.)  Plaintiff again demanded to hear this from the Director of Corrections. (*Id.*)  Sunderland asked Plaintiff if he wanted his property, and Plaintiff responded that unless he was given all of his appliances, he did not want to accept any of his appliances. (*Id.*)  Sunderland states that he placed Plaintiff's property back into the boxes and secured it in the Mule Creek State Prison R&R Property Room, and wrote a general chrono memorializing this incident. (*Id.* at ¶ 7; Ex. A.)

Pfeiffer states that he directed Correctional Officer D. Sung to escort Plaintiff to Receiving and Release on October 26, 2016 to issue him his allowable property. (Pfeiffer Decl. ¶ 6.)  Pfeiffer states that he "spoke with [Plaintiff] upon his arrival at R&R about his property, and again explained to [him] that he was only allowed to have three electric appliances under the DOM." (*Id.*)  Pfeiffer's declaration recites an exchange wherein Plaintiff again refused to accept his property. (*Id.* at ¶ 7.)  This exchange was documented in a general chrono written by Correctional Officer D. Sung, who was present during the entire incident. (*Id.* at ¶ 8; Ex. A.)  Pfeiffer states that he had Plaintiff brought to R&R one additional time to try to give him his property, but he refused to accept the property on that occasion as well. (*Id.* at ¶ 9.)

On January 5, 2017, Pfeiffer states that he had Plaintiff brought to R&R, and at this

1  time Plaintiff agreed to accept his property, despite not being allowed more than three

2  appliances. (*Id.* at ¶ 10.) Plaintiff requested that the fan be placed on a shelf, and stored,

3  pending the outcome of a prison grievance on the issue. (*Id.*) At that time, Pfeiffer

4  issued Plaintiff all of his remaining property, including his legal property, which Plaintiff

5  accepted. (*Id.*) Plaintiff signed a document confirming receipt of his property, except the

6  fan. (*Id.*; Ex. B.)

7       Both Pfeiffer and Sunderland state that "[n]o one at Mule Creek State Prison ever

8  withheld [Plaintiff's] legal materials from him. [Plaintiff] could have obtained all of his

9  legal materials at any time, and he could have gotten them on September 21, 2016, but he

10  refused to take them on principle that if he could not have everything, he would take

11  nothing." (Pfeiffer Decl. ¶ 11; Sunderland Decl. ¶ 9.)

12       **B. Discussion**

13       Under Federal Rule of Civil Procedure 56(d) a court should only grant a

14  continuance if a party shows that he "cannot present facts essential to justify [his]

15  opposition." Here, Plaintiff states that he cannot respond to Defendants' Motion for

16  Summary Judgment because he is in medical crisis and because he does not have access

17  to his legal materials.

18       Plaintiff submits a declaration from Augusto Robles, a fellow inmate at Mule

19  Creek State Prison. (ECF No. 80 at 64-65.) This declaration states that Plaintiff is a

20  mental health patient at the Enhance Outpatient Level of Care. (*Id.* at 64.) Mr. Robles

21  declares that Plaintiff does not have any property in his cell, and he has witnessed

22  Plaintiff try to retain his property daily. (*Id.*) Mr. Robles states that they were unable to

23  finish the motion and could not provide documentary evidence in support of the motion

24  because the prison staff have his property. (*Id.* at 65.)

25       After a review of the documents submitted by Plaintiff in support of this opposition

26  to Defendants' motion for summary judgment, and the documents filed by Plaintiff to

27  date, the Court finds Plaintiff's alleged impairments have not impeded his ability to

28  litigate this case and his opposition. Throughout this litigation, Plaintiff has filed a

complaint, (ECF No. 1), an objection to report and recommendation, (ECF No. 25), a notices of appeal, (ECF No. 28), a motions for an extension of time, (ECF No. 43,), a motion to compel discovery, (ECF No. 46), supplemental briefing regarding his motion to compel discovery, (ECF No. 51), and a reply to response to Motion for Discovery, (ECF No. 57).  In each of the aforementioned documents, Plaintiff has clearly articulated his legal theories, and despite his alleged legal shortcomings, has demonstrated that he is capable of prosecuting his case.

Pro se litigants are afforded some leniency to compensate for their lack of legal training.  *See Garcia v. Strayhorn*, No. 3:13-cv-0807 BEN (KSC) (S.D. Cal. May 14, 2015) (Denying Ruben Dario Garcia, Jr., motion to appoint counsel).  "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (internal citation omitted). This also applies to motions.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).  Accordingly, Plaintiff's *pro se* status is taken into consideration by the Court when his filings, including his opposition motion, are reviewed.  Therefore, the **RECOMMENDS** a finding that Plaintiff's mental status does not impair his ability to litigate this case, and no continuance should be granted on this basis.

With respect to Plaintiff's claims regarding his legal materials, the Court likewise finds this justification without merit.  First, the Court agrees with Defendants that Plaintiff had the ability to obtain his legal materials at any time since September 21, 2016.  (Sunderland Decl. ¶ 3.)  Even if Plaintiff wanted to maintain his dispute regarding his electronic appliances, he could still take possession of his legal materials.  Plaintiff's refusal to accept his property was willful.  This is further supported by the fact that Plaintiff took possession of his property on January 5, 2017, just four days after submitting his opposition.  (Pfeiffer Decl. at ¶ 10.)  The Court undertook significant efforts to provide Plaintiff with any legal materials he needed to properly respond to Defendants' Motion for Summary Judgment.  (ECF No. 76.)  This included (1) a print-

out of the docket; (2) the operative complaint; (3) Defendants' motion for summary judgment and exhibits; (4) Plaintiff's motion to compel (Dkt. No. 46); (5) Plaintiff's supplemental declaration in support of his motion to compel (Dkt. No. 51); (6) Defendants opposition to Plaintiffs motion to compel (Dkt. No. 55); and (7) this Courts order on Plaintiffs motion to compel (Dkt. No. 59).  (ECF No. 76.)

During a call with the Court, after receiving these documents, Plaintiff reiterated the need for additional documents currently outside of his possession in order to properly respond to Defendants' Motion for Summary Judgment.  (*Id.*)  The Court ordered Plaintiff to set forth his position and what documents he still needed in order to properly respond in his opposition motion.  (*Id.*)  In his opposition motion, Plaintiff fails to identify any documents that he needed, but did not have access to, to support his opposition.  Plaintiff's blanket statements that he needs additional documents does not support a continuance of this motion.  Therefore, the Court **RECOMMENDS** a finding that Plaintiff's lack of access to his legal materials was willful, and no continuance should be granted on this basis.  The Court **RECOMMENDS** that Plaintiff's request for a continuance should be **DENIED**.

## VI.   CONCLUSION

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. section 636(b)(1).  For the reasons set forth above, it is **RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant R. Estes;

2. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant R. Blahnik;

3. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Mendoza;

4. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Benyard;

5.  Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Flores;

6.  Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Hernandez;

7.  Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Canada;

8.  Defendants' Motion for Summary Judgment be **DENIED** as to Defendant J. Cariman;

9.  Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Rutledge;

10. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Olson;

11. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Ramirez;

12. Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Seibel.

13. Plaintiff's Motion for a Continuance is **DENIED**.

**IT IS ORDERED** that no later than <u>**February 17, 2017**</u>, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>**March 3, 2017**</u>.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  February 3, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge