# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DARIO GARCIA, Jr., <br><br> Plaintiff, <br> vs. <br><br> R. BLAHNIK, et al., <br><br> Defendants. | CASE NO. 14cv875-LAB (BGS) <br><br> **ORDER ADOPTING, IN PART, AND MODIFYING, IN PART, REPORT AND RECOMMENDATION GRANTING SUMMARY JUDGMENT** |

Ruben Garcia has filed five retaliation lawsuits and over 100 prison appeals in his seven years at R.J. Donovan Correctional Facility. This action is among the latest. Garcia's claims involve a librarian refusing to move a photocopier; a guard refusing to process a grievance as confidential correspondence; and an officer refusing to stop a nurse from touching Garcia's I.D. When these defendants failed to comply with Garcia's demands, he filed grievances accusing them of breaking prison regulations. The defendants made records disputing his grievances as false, abusive, and improper. Garcia then filed this lawsuit against defendants for retaliating against him for filing grievances.

The prison grievance process was designed to check officials from suppressing prisoner's exercise of Constitutional rights. But retaliation claims "are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). That abuse is particularly insidious when inmates repurpose retaliation law to threaten the brave men and women tasked with the difficult job of guarding them. That's the case here.

**Summary**

Garcia is serving a life sentence for murdering his girlfriend. Three years ago, he sued twelve prison officials for retaliation. The magistrate judge recommended granting summary judgment as to all of the defendants except one. Garcia filed several objections to the Report and Recommendation. The Court adopts the R&R for the most part, but modifies it to grant summary judgment as to all defendants.

**Legal Standards**

"[A] corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct," but courts must also "defer to reasonable decisions of prison officials." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016). "When a prisoner claims retaliation, we strike this balance by requiring" the prisoner "to show that a state actor took some adverse action because of the prisoner's protected conduct." *Id.* (alterations omitted). The prisoner must also show that "the action did not reasonably advance a legitimate correctional goal." *Id.* Summary judgment is appropriate if the moving party shows there's no genuine dispute as to a material fact essential to the claim or claims. Fed. R. Civ. P. 56.

**Analysis**

**A.    The Court modifies the R&R to grant summary judgment for Officer Cariman**.

The Supreme Court has warned that when prisoners sue correction officials, the lower courts must "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). The Ninth Circuit has acknowledged that in *Sandin*, the high court "specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management, which often squanders judicial resources with little offsetting benefit to anyone." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (alterations omitted). In particular, our circuit has emphasized that deference should be given "to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* That sensible guidance applies here.

/ / /

The R&R recommended granting summary judgment as to all but one defendant: Officer Cariman. Garcia's retaliation claim against Cariman is based on two encounters.

The first happened in July 2013 while Cariman was supervising inmates receiving medication. Cariman says Garcia accused the duty nurse of contaminating Garcia's medicine by handling other inmates' identification cards. The nurse told Garcia to take his medication or leave. Garcia refused to provide his card or take his medication. Garcia demanded that Cariman take action. But Cariman told Garcia the same thing as the nurse: take the medicine or forfeit treatment and leave. Garcia returned to his cell and composed a Form 22.[1]

Garcia's Form 22 confirms Cariman's version of events:

"Cariman . . . while you were conducting youre Post Assignment duties . . . as med-line Security personnel, I reported to you how the on-duty (LVN) was endangering I/M health and safety . . . through cross contamination . . . [by] taking physical possession of [inmate] I.D.s or demanding them to place such on the counter . . . . In response you demanded I comply or I would forfeit treatment . . . . Because of such, I am requesting to be provided cause or a legitimate penological interest for youre failure to ensure inmate safety." (Errors in original.)[2]

The second encounter happened two weeks after Garcia filed this Form 22. Garcia was getting his medication and repeated the same drill: Garcia argued with the dispensing nurse about identification, medication, and contamination. Cariman stepped-in and Garcia argued with him. Specifically, Garcia said, "You are retaliating, because I wrote you up last week." Cariman says Garcia was noncompliant and disrupting the pill line—he told Garcia to "cuff up" and put him in a holding cell. Then Cariman wrote a Rules Violation Report documenting Garcia's interference. The RVR tells the same basic story as Cariman's declaration.[3]

Garcia's opposition picks out various facts in Cariman's account and says they didn't happen. For example, Cariman says that Garcia caused a disruption of about 10 to 15 minutes–Garcia says it was 10 to 15 seconds. Cariman says he approached Garcia at the

---

[1] Dkt. 63-8 (Cariman Declaration). The Form 22 is a means for prisoners to ask to speak with a staff member. 15 CCR § 3086.

[2] The opposition echoes Cariman's version as well. Note that Garcia's grievance is structured to lay the groundwork for his retaliation claim: "I am requesting to be provided . . . a *legitimate penological interest* for your failure to ensure inmate safety" Dkt. 63-3 at 100.

[3] Dkt. 63-8.

- 3 -

window. Garcia says it wasn't at the window. Cariman says Garcia called him a "mama pinga." Garcia says he's never heard that expression.

The R&R recommended against granting summary judgment for Cariman because the magistrate judge perceived that there were too many conflicting facts surrounding the encounter between Garcia and Cariman in the pill line. As an example, the magistrate judge pointed out that there was a dispute whether Garcia took his medication or showed his identification to Cariman. The Court acknowledges these minor discrepancies but concludes, contrary to the magistrate judge, that the discrepancies don't concern materials issues.[4]

One of the discrepancies does require specific discussion: Garcia says he told Cariman that he filed a grievance against him and Cariman replied: "Oh yeah! . . .you wrote me up! . . . then turn around and cuff-up!" But regardless of who's telling the truth—and crediting Garcia's account as the Court must under the summary judgment standard—there are two reasons that quote doesn't get Garcia to a jury.

First, Cariman *agrees* that Garcia told him, "You are retaliating because I wrote you up last week," *and*, that Cariman told Garcia "to cuff up." Garcia hasn't created a material dispute by merely adding some selective dialogue, or by using ellipses to leave out part of the conversation, and then asking the Court to speculate that Cariman cuffed Garcia *because* Garcia said he filed the Form 22.[5] *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996) (claim that plaintiff "did one thing, and subsequently the other thing happened" didn't raise a "material fact in order to preclude summary judgment").

Second, Cariman says he told Garcia to cuff up for good reason: Cariman had just gone through the same scenario with Garcia two weeks earlier. Cariman says he knew

---

[4] Garcia says he never told Cariman "no body touches my i.d." and that's "supported by the fact that" he's never been disciplined for failing to turn in his identification cards. (Dkt. 80 at 49.) But that's belied by Garcia's Form 22, filed two weeks before this second incident, that raises these exact issues. And whether Cariman accurately recorded Garcia's statement isn't material: Garcia admits that on this second occasion, the nurse asked him, "you don't like people touching your i.d.?"; and in response, Garcia launched into his concern that the nurses were threatening his safety. That corroborates the important fact in Cariman's story–namely, Garcia was once again making an issue about his contamination concern.

[5] The Court concludes that Garcia's use of ellipses with reference to this quote was intentional: he used them both in his opposition and in his declaration. Dkt. 80 at 19, 48.

Garcia wasn't taking his medications regularly, and that he was concerned the situation could escalate and turn volatile. Cariman made the decision to nip the problem in the bud, put Garcia in cuffs, and set him aside in a temporary holding cell so he could "preserv[e] institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

Cariman also proffered unrebutted evidence that monitoring the pill line is particularly important because there is an ongoing problem with inmates finding ways to stash medicine, stock it up, and then combine it with other substances to create more powerful drugs. Garcia's decision to confront the nurse and Cariman about supposed contamination, with a crowded line of inmates waiting for medication, "disrupted orderly operations." CCR § 3004. Garcia hasn't shown that Cariman's actions were "arbitrary" "to the maintenance of order in the institution." *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (alterations omitted).To the contrary, it is Cariman who has raised legitimate correctional goals that Garcia hasn't addressed. *Barnett*, 31 F.3d at 816 (9th Cir. 1994)("prison discipline" is a "legitimate penological purpose").

Cariman's "day-to-day" decision to remove Garcia from the pill line is the type of call *Sandin* says courts need to avoid second guessing. Instead, the Court should "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482. Impaneling a jury to resolve this kind of triviality would be a futile exercise that "squanders judicial resources with little offsetting benefit to anyone." *Pratt*, 65 F.3d at 807 (9th Cir. 1995).

**B.    The Court overrules Garcia's objections to the R&R.**

The Court reviews Garcia's objections de novo but otherwise accepts the accuracy of conclusions in the R&R. *Thomas v. Arn*, 474 U.S. 140, 152 (1985). Garcia objects to the R&R granting summary judgment against four defendants and for failing to grant a continuance. The Court addresses each objection below, but agrees with the remainder of the R&R.

/ / /

/ / /

### 1. Blahnik

Garcia objects to the R&R granting summary judgment to librarian Blahnik. A few summers ago, Garcia filed two Form 22s informing Blahnik that he needed more library time and copies free of charge. After filing the Form-22s, two library incidents occurred: (i) Garcia demanded that Blahnik move the photocopy machine to the front of the library so he could monitor Blahnik making copies of Garcia's confidential legal documents; and (ii) Garcia failed to show up for his scheduled library time. Blahnik filed 128-Bs to document both events.[6]

Garcia objects that the 128-Bs amounted to adverse actions because they contained threats. He says it doesn't matter that the threat was made in the context of the 128-B. He contends that a threat is a threat, regardless of the medium. He relies on *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009). In *Brodheim*, after a prisoner filed grievances, the Prison Appeals Coordinator wrote back, "I'd also like to warn you to be careful what you write . . . on this form" and then requested that the prisoner "be transferred out of the CMF due to his filing of grievances and this lawsuit." *Id.* at 1264. The Ninth Circuit reversed summary judgment because it found the district court overlooked that "the mere threat of harm can be an adverse action." *Id.* at 1270.

What happened in *Brodeim* is quite different from what happened here. Blahnik's 128-Bs weren't adverse actions or threats. As the librarian, Blahnik has every right to record Garcia's failure to follow library rules, and, to put Garcia on notice that continuing to interfere with the functioning of the library has consequences.[7] *See* CCR §§ 3005, 3122.

Even were the Court to construe Blahnik's statements as threats, Garcia hasn't put forward evidence that his Form-22s were "the substantial or motivating factor" that caused Blahnik to file the 128-Bs. *Brodheim* at 1271. Garcia, instead, argues that the 128-Bs threatened him because of his "repeated request to be provided duplication services in a

---

[6] The Form 128-B is defined as a general chronology "which is used to document information about inmates and inmate behavior." Unlike the 128, the RVR (Rules Violation Report), or Form 115, documents disciplinary infractions. CCR § 3000.

[7] Dkt. 63-10 (Blahnik Declaration).

- 6 -

manner that did not violate his right to confidential correspondence."[8] Demanding the librarian move a photocopier to the front of the library isn't protected speech.

Blahnik later filed an RVR after Garcia *again* demanded movement of the photocopier. Garcia hasn't raised a material dispute that the RVR was filed for an illegitimate purpose. Blahnik explained that inmates aren't allowed near the copying machine because they contain "metal parts that could be used as weapons."[9] And Garcia again disrupted Blahnik's administration of the library by demanding that Blahnik personally make copies and then arguing that Blahnik needed to move the photocopier to the front of the library.

Garcia objects that the RVR discusses previous grievances and states that Garcia threatened litigation. He says that's sufficient evidence that Blahnik didn't have a legitimate correctional purpose, but was instead, targeting him for filing past grievances.

The Court disagrees. The two relevant sentences Garcia mentions simply state: "[Garcia] has written previous frivolous 602's pertaining to this same issue since August 2012. He further threatened litigation." Blahnik reported the previous grievances in the context of Garcia's continued demand that he move the photocopier—in other words, Garcia can't manufacture a case by threatening Blahnik with a lawsuit, then filing a lawsuit based on Blahnik's report that Garcia threatened a lawsuit.[10]

**2. Flores**

Garcia objects to the R&R granting summary judgment to Officer Flores. Flores was working overtime one evening when Garcia approached him and demanded that he process another inmate's appeal as confidential correspondence. Flores refused because prison appeals aren't processed as confidential. Garica responded that he would "go to every building on the yard and have every inmate try to process all appeals as confidential correspondence every time [Flores] was working as a floor officer in their building." And

---

[8] Dkt. 80 at 8.

[9] Dkt. 63-10.

[10] Dkt. 63-10. Garcia also objects to summary judgment for Blahnik's supervisor, Mendoza, because he signed the RVR Blahnik filed. Because the Court rejects Garcia's argument that Blahnik violated his rights, it likewise rejects his objection that Blahnik's supervisor is guilty of conspiring with him to violate Garcia's rights.

Garcia "threatened to orchestrate mass lawsuits" against Flores for his refusal. Flores filed an RVR reporting Garcia's threats.[11]

Garcia doesn't dispute this account. Instead, he argues that inmates have a right to have prison appeals treated as confidential correspondence when they contain confidential information. He admits that he told Flores he "was going to write and file grievances jointly/together with other inmates." Flores asked if Garcia was going to "conspire to file grievances" against him–Garcia says he responded "yes it was exactly what I and other inmates will do."[12]

Garcia is missing the point here: it's not whether he *has the right* to file appeals as confidential correspondence—it's that he *doesn't have the right* to threaten a prison guard who disagrees with his interpretation of regulations. As Garcia's objections note, there's a procedure for prisoners to bring issues to the prison's attention through a group appeal where the prisoners submit "*one* CDCR Form 602." CCR § 3084.2 (emphasis added). Threatening to have "every inmate" conspire to harass Flores by filing the appeals and "mass lawsuits" isn't protected conduct.

The R&R supplied three different reasons for summary judgment, Garcia objected to two, and the Court need only address one: Flores had a legitimate penological purpose in reporting Garcia's threats that he would abuse the appeals process unless Flores did what he wanted. CCR § 3013 ("Inmates shall not attempt to gain special consideration" through "threat or other unlawful means."); *see* § 3084.4 (appeals process abuse).

**3.  Estes**

Garcia objects to the R&R granting summary judgment for Officer Estes. Garcia says he filed a Form 22 alleging that Estes wasn't forwarding Garcia's Form 22s. Estes documented this encounter by filing a 128-B (general chronology). Estes' write-up repeats allegations contained in Garcia's Form 22; namely, that Garcia says the staff is conspiring against him. Estes reported that Garcia's allegation was false (he *was* forwarding the Form

---

[11] Dkt. 63-14.

[12] Dkt. 80 at 54.

1  22s), that Garcia had filed an "excessive number" of Form 22s, and that he was "utilizing the
2  CDCR Form 22 process in an abusive manner."[13]

3  Garcia objects that Estes' 128-B was an adverse action because it amounted to
4  threatening him under *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009). The reasoning here
5  tracks the problems with Garcia's claims against Blahnik: When a prisoner makes a false
6  accusation against a guard, the guard has every right to make a record of the alleged falsity
7  of the accusation in a 128-B without fear of a lawsuit. Estes recorded the facts as he
8  perceived them and reported his observations of Garcia's conduct; nothing in such a
9  recounting amounts to a threat like the one in *Brodheim*.

10  Even if the Court were to conclude that Garcia had raised a genuine issue that Estes'
11  128-B amounted to a threat of retaliation, Garcia hasn't put forward evidence that Estes filed
12  the 128-B for an improper correctional purpose. Instead, Estes' declaration explained that,
13  among other things, he was reporting a basic violation of prison regulations because Garcia
14  filed Form 22s more often than the fourteen days allowed. CCR § 3084.4.

**4.  Continuance**

16  Garcia says he's entitled to more time to brief his opposition. But Garcia filed this
17  action three years ago and defendants filed their summary judgment motion more than six
18  months ago. The magistrate judge went out of his way to accommodate Garcia: He granted
19  multiple extensions and facilitated calls to ensure Garcia had the legal materials he needed
20  to oppose summary judgment. Though Garcia's objections came in ten days after the
21  deadline, the Court accepted them anyway.

22  Garcia also objects that the R&R erred by ignoring his medical impairments. Not so.
23  The Court doesn't dispute that Garcia's receiving mental health treatment. Nor does the
24  Court overlook the fact that the jailhouse lawyer program is assisting Garcia. The Court
25  agrees with the magistrate judge that Garcia has effectively litigated the case.

26  Garcia also objects to the refusal to grant an additional continuance on the ground that
27  he needs time to gain access to additional legal materials. He says the R&R improperly relied

---

[13] Dkt. 63-9.

on non-party declarations from prison staff stating that Garcia refused to take his property on multiple occasions. But the magistrate judge addressed these concerns in November: he ordered the Defendants to print-out and provide the briefing documents to Garcia. The judge also ordered Garcia to indicate in his opposition any specific documents he needed but didn't have to oppose summary judgment.[14] Garcia didn't do that. Instead, he signed-off his brief by accusing the court of forcing him to respond "while suffering from serious mental illness/crisis" which denies "him a fair hearing and [is] tantamount to an abuse of discretion."[15]

The Court understands Garcia's situation, but finds that his concerns have been thoroughly and repeatedly accommodated. And it's also worth point out that Garcia's concerns aren't the only ones that count: Defendants have had Garcia's lawsuit hanging over their heads for three years. The Court must also Garcia's propensity to repeatedly ask for indefinite extensions with the responsibility of managing a busy docket. After receiving numerous prior extensions, Garcia's not entitled to more time.

**Conclusion**

Garcia says he's concerned about how medical staff handle identifications cards, how photocopying is done, and how confidential information is protected. It may be more productive if he advocates for the policy changes he wants within the prison, rather than filing lawsuits. The Court adopts the Report and Recommendation but modifies it to grant summary judgment in favor of all defendants.

**IT IS SO ORDERED**.

DATED:  3/29/2017

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[14] Dkt. 76, 78.

[15] Dkt. 80 at 21.

- 10 -